GEO. E. MALLINSON IMPORTING CO., INC. *v.* UNITED STATES

No. 6030.—Invoice dated Hong Kong, July 21, 1941.
Certified July 22, 1941.
Entered at New York, N. Y., September 15, 1941.
Entry No. 713887.

(Decided June 21, 1944)

*John D. Rode* for the plaintiff.

*Paul P. Rao*, Assistant Attorney General (*Samuel D. Spector*, special attorney), for the defendant.

KINCHELOE, Judge: This appeal to reappraisement involves an importation of sea-grass rugs or squares manufactured in French Indo-China by Cheong Lee, who was also the seller of the merchandise. The invoice was made out in Hong Kong and consulated at that place. The rugs were invoiced and entered at a price of 13¾ cents per square foot in Hong Kong currency, plus packing of $50. The rugs were appraised at the same unit price, plus certain charges appearing on the invoice, namely, packing, forwarding expenses from Haiphong to Hong Kong, marine insurance Haiphong to Hong Kong, storage at Hong Kong, and telegrams from Haiphong to Hong Kong.

The question presented herein is whether Haiphong, in French Indo-China, or Hong Kong is to be taken as the principal market for the purpose of appraisement.

No oral testimony has been introduced by either the plaintiff or the defendant, the case having been submitted on three exhibits introduced in evidence.

Plaintiff's exhibit 1 consists of a sworn affidavit of William M. Brown, an employee of plaintiff now in the armed service of the United States. The affidavit is dated May 8, 1942, and was taken in New York. Mr. Brown states that he was vice president of the plaintiff corporation; that he had been with said corporation since 1935; that

(331)

he was familiar with the rugs covered by the instant importation; that he was familiar with the details of purchase and shipment of said rugs; that the rugs were purchased from Cheong Lee, one of the largest manufacturers of such or similar rugs in French Indo-China; that Cheong Lee maintains a factory at Phat-Dien, near the town of Haiphong in French Indo-China; that he has made many visits to French Indo-China during the past years; that he was in French Indo-China in March 1938, again in May 1938, again in June 1940, and again in January 1941; that on all of said occasions he visited Haiphong as well as other places in French Indo-China for the purpose of acquainting himself with market conditions and to study and observe the various sources of supply of various kinds of rugs with a view to purchasing same for the plaintiff; that he talked to various manufacturers and dealers and visited various factories on all of his visits; that he also inspected samples of rugs shown to him by other dealers and manufacturers; that Haiphong is one of the principal markets in French Indo-China for straw rugs such as involved in this case; that straw rugs such as or similar to the rugs involved in this case are offered for sale and sold on a square-foot basis; that said straw rugs are usually and in the ordinary course of trade sold both for home consumption and for exportation to the United States without any quantity discount; that the usual wholesale quantity is 5,000 or more square feet; that in July 1941 straw rugs the same as or similar to the straw rugs involved herein were freely offered for sale to all purchasers in Haiphong in the usual wholesale quantities and in the ordinary course of trade for exportation to the United States including the cost of all containers and coverings at Hong Kong $.1375 per square foot plus packing; that in July 1941 the price for home consumption in French Indo-China was no higher; that straw rugs such as those involved herein were freely offered to the plaintiff by several different manufacturers and dealers in Haiphong at prices no higher than Hong Kong $.1375; that with regard to the rugs involved in the instant case, the manufacturer Cheong Lee made them according to the designs and specifications submitted by the plaintiff; that the order for said rugs was placed on May 29, 1941, long prior to actual manufacture and shipment; that when the said rugs left the establishment of the manufacturer in French Indo-China they were destined for shipment to the United States, the particular rugs in question having been manufactured solely and expressly for the plaintiff; that the said rugs were definitely marked for the plaintiff; that there was no diversion of said shipment nor any intention to divert said shipment after it left French Indo-China; that the rugs were shipped to the United States via Hong Kong; that the rugs were not held for offer or sale to all buyers in Hong Kong but were merely sent via Hong Kong for lading aboard a steamer sailing to the United States; that said rugs never entered the commerce

of Hong Kong or any other country, and that said rugs remained in Hong Kong only long enough to permit their inspection and to permit preparation of shipping documents by K. W. Pedersen, export manager of Jebsen & Co. of Hong Kong, purchasing agents for the plaintiff.

Defendant's exhibit 2 consists of a letter by the director of the Customs Information Exchange addressed to the appraiser at Cleveland, attached to which are copies of four letters all addressed to the Associated Merchandising Corporation, New York, by the Associated Merchandising Corporation of Hong Kong, and dated December 13, 18, 31, 1940, and January 23, 1941. These letters draw attention to the fact that it was buying rugs ex Godown in Hong Kong; that the freight is paid by the manufacturer; that the freight has greatly increased from Haiphong to Hong Kong owing to conditions, and that the Associated Merchandising Corporation has agreed to stand half of the increase. So far as I can see these letters are only relevant in showing that Hong Kong is also a principal market for sea-grass rugs, but does not disprove that Haiphong is also a principal market for same.

Defendant's exhibit 3 consists of a copy of a letter written on the letterhead of Cheong Lee Co., Hong Kong, dated February 28, 1941, and addressed to one William J. B. Waite, 351 California St., San Francisco. While the copy shows no signature to the letter, counsel for plaintiff waived any objection thereto on that ground. The last paragraph of the letter states that the writer has in stock in Hong Kong 25 bales of rugs, which are offered to Mr. Waite at 19½ cents f. o. b. Hong Kong. It is not shown whether the rugs referred to are the same or similar to the imported. But in any case the letter only shows that Hong Kong is also a principal market, and does not disprove that Haiphong is not also a principal market for the rugs.

Under section 402 of the Tariff Act of 1930 imported merchandise is dutiable primarily upon the basis of foreign value, or export value, whichever is higher. Export value is defined in subdivision (d) of said section, as follows:

(d) EXPORT VALUE.—The export value of imported merchandise shall be the market value or the price, at the time of exportation of such merchandise to the United States, at which such or similar merchandise is freely offered for sale to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, plus, when not included in such price, the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States.

The contention of the plaintiff is that the country of exportation of the present merchandise was French Indo-China; that the rugs are dutiable on the basis of export value, there being no higher foreign value; and that the entered value represents the export value.

Article 14.3 (*d*) of the Customs Regulations of 1943 provides that—

Merchandise imported from one country, being the growth, production, or manufacture of another country, shall be appraised at its value in the principal markets of the country from which it is immediately imported unless it appears by the invoice, bill of lading, or other evidence that the merchandise was destined for the United States at the time of original shipment, in which case it shall be appraised at its value in the principal markets of the country from which it was originally exported.

Article 783 of the Customs Regulations of 1937 and article 785 of the Customs Regulations of 1931 were to like effect.

The plaintiff therefore contends (1) that the country of exportation of the present merchandise was French Indo-China; (2) that the rugs are dutiable on the basis of export value, there being no higher foreign value; and (3) that the entered value correctly represents the export value.

Plaintiff cites the case of *United States* v. *Meadows Wye & Co.*, T. D. 41622 (49 Treas. Dec. 959), as authority for the proposition that, statements on an invoice to the contrary notwithstanding, it can be shown that the country of exportation differs from the place of invoice. In that case a shipment from Italy was repacked in and invoiced from London, England, but did not enter the commerce of England, and the court held that Italy was the country of exportation. This court's decision was affirmed without opinion in *United States* v. *Meadows Wye & Co.*, 14 Ct. Cust. Appls. 488.

Plaintiff relies further on the case of *Hensel, Bruckmann & Lorbacher, Inc., for a/c Fred'k Blank & Co.* v. *United States*, Reap. Dec. 3132, decided by Judge Evans, and affirmed by Division II of this court in Reap. Dec. 3207. That case involved a shipment of wallpaper which was sold by Salubra, Ltd., of Basle, Switzerland, to Frederick Blank & Co., of New York. The invoice was prepared and consulated at Basle, Switzerland, and was made out in United States currency. The goods had actually been manufactured and shipped by a subsidiary company in Germany. In holding that Germany was the country of exportation the court pointed out that the goods were intended for export to the United States; that the goods were marked at the factory as destined for the importer in the United States, and that there was no intention to divert the shipment.

In this respect I think the material facts in the present case, as set forth in plaintiff's affidavit, exhibit 1, are to the same effect and, in my opinion, show that French Indo-China, the country of origin and production of the rugs here in question, is the real country of exportation for the purpose of appraisement. As already stated, the letters represented by defendant's exhibits 2 and 3 merely tend to show that Hong Kong is a principal market for the involved merchandise, but do not in any way disprove that Haiphong, French Indo-China, is

also one of the principal markets for same. So that the testimony of plaintiff's witness Brown as given in said affidavit, exhibit 1, stands uncontradicted and unimpeached, and shows, among other things, that the instant rugs were manufactured in French Indo-China by Cheong Lee, who maintains a factory at Phat-Dien, near Haiphong; that the rugs were made according to designs and specifications submitted by the plaintiff and ordered prior to manufacture and shipment; that when the said rugs left the manufacturer's establishment in French Indo-China they were destined for shipment to the United States; that they were definitely marked for the plaintiff; that there was no diversion of the shipment, nor any intent to divert the shipment after it left French Indo-China; that the said rugs were sent via Hong Kong to be laden on board a steamer for the United States; that the rugs did not enter the commerce of Hong Kong, nor were they held for offer or sale to all purchasers in Hong Kong; and that the merchandise remained in Hong Kong only long enough to permit inspection and preparation of shipping documents by plaintiff's purchasing agent.

I find from the record presented that the plaintiff has established, at least *prima facie*, the following facts:

(1) That Haiphong is one of the principal markets in French Indo-China for rugs such as or similar to those here in question.

(2) That such or similar rugs are freely offered for sale in Haiphong, and are sold on a square-foot basis.

(3) That the usual wholesale quantity in which such or similar rugs are sold is 5,000 square feet or more.

(4) That in July 1941, straw rugs the same as or similar to the instant rugs were freely offered for sale to all purchasers in Haiphong, French Indo-China, in the usual wholesale quantities and in the ordinary course of trade for exportation to the United States at a price of 13.75 cents per square foot in Hong Kong currency, plus packing.

(5) That in July 1941, the price for home consumption in French Indo-China was no higher.

Therefore, upon the foregoing facts and on authority of the cases cited, *supra*, I hold as matter of law:

(1) That French Indo-China is the country of exportation; (2) that the rugs in question are properly dutiable on the basis of export value, which is no higher than the foreign value; and (3) that the said export value is the same as the invoice and entered value, namely, 13.75 cents per square foot in Hong Kong currency, plus packing. Plaintiff's entered value is therefore sustained.

Judgment will be rendered accordingly.