F. W. HAGEMANN *v.* UNITED STATES

No. 7623.—Invoice dated Den Haag, Netherlands, January 19, 1938. Certified January 21, 1938. Entered at New York, N. Y., February 7, 1938. Entry No. 812604.

Second Division, Appellate Term

(Decided October 11, 1948)

*John D. Rode* for the appellant.

*Paul P. Rao*, Assistant Attorney General (*Samuel D. Spector*, special attorney), for the appellee.

Before Lawrence, Tilson, and Rao, Judges; Rao, J., not participating

Tilson, Judge: This is an application for review of the decision and judgment of the lower court filed under the provisions of section 501 of the Tariff Act of 1930. The merchandise involved is known under the trade name of Liquitol B and C, and "* * * is a combination of chemical compounds that are used in the iron foundries, steel foundries, and steel-producing companies use it." It was entered at the port of New York on February 7, 1938, upon an invoice dated Den Haag, Netherlands, January 19, 1938, and certified on January 21, 1938. The Liquitol B was invoiced and entered at Rm 20 per 100 kilos, less 2 percent, and was appraised at $0.1218 per pound, net packed, on the basis of United States value. The Liquitol C was invoiced and entered at Rm 16 per 100 kilos, less 2 percent, and was appraised at $0.0667 per pound, net packed, on the basis of United States value. Although, as stated above, the merchandise was entered on February 7, 1938, it appears that it was not appraised until August 25, 1939.

The trial court concluded its decision as follows:

Defendant's motion to dismiss the appeal for failure by plaintiff to make out a *prima facie* case is granted, and judgment will be rendered accordingly.

The discussion herein, with the conclusion reached, makes it unnecessary to refer to the phase of the case concerning the country of exportation.

Counsel for appellant has filed the following assignment of errors:

The Court below erred—

1. In dismissing the appeal to reappraisement.

2. In not finding the value of the merchandise from the evidence in the entry record.

3. In not finding that Germany was the country of exportation.

4. In not finding that the entered value correctly represented foreign value in Germany.

5. In not finding that there was no higher export value in Germany.

6. In holding that "the writer of this opinion, who presided at the trial, was liberal in permitting the plaintiff to present available testimony."

7. In refusing to find that there was no evidence in the record showing an absence of foreign value in Germany.

8. In failing to find that the evidence of record completely destroyed the presumption of correctness attaching to the Appraiser's finding.

Section 16 (b) of the Customs Administrative Act of 1938 provides, among other things, that:

Every such appeal shall be transmitted with the entry and the accompanying papers by the collector to the United States Customs Court and shall be assigned to one of the judges, who shall in every case, notwithstanding that the original appraisement may for any reason be held invalid or void and that the merchandise or samples thereof be not available for examination, after affording the parties an opportunity to be heard on the merits, determine the value of the merchandise from the evidence in the entry record and that adduced at the hearing.

In dealing with an analogous situation in *United States* v. *Joseph Fischer as Liquidating Agent of Schmoll Fils Assd., Inc., et al.*, 32 C. C. P. A. 62, our appellate court held as follows:

> As to the appraisements made subsequent to the effective date of the Customs Administrative Act, amending section 501 of the Tariff Act of 1930 (July 25, 1938) it clearly was the duty of the trial court under the provisions of the statute, whether the appraisements were valid or invalid, although no evidence was submitted at the trial, to determine the value of the merchandise covered by those appraisements from "'the evidence in the entry record'," as held by the appellate division of the Customs Court.

Therefore, when the court below dismissed the appeal instead of finding a value for the merchandise, as directed by the statute, it clearly fell into error. Counsel for appellee contends that this division should find a value for the merchandise rather than reverse the judgment of the court below and remand the case to it for that purpose. The answer to this argument is that the statute does not so provide.

With reference to the statement of the court below that it was "unnecessary to refer to the phase of the case concerning the country of exportation," we find the following statement in appellee's exhibit 7:

> * * * Although he understood now that the said two shipments were shipped in transit through Holland without being in any way manipulated by the Dutch seller, he reaffirmed the firm's refusal to furnish any information regarding the cost of production.

Appellee's exhibit 7 is a report of special agent Paul Hermes, and in enumerating the invoices which his said report covers he lists invoice No. 298, January 19, 1938, and that is the identical invoice here involved. If, as stated in the above report, this merchandise was "shipped in transit through Holland without being in any way manipulated by the Dutch seller," for reasons hereinafter stated it might well have been necessary for the court to consider, and in fact for it to decide concerning the country of exportation.

At the trial of this case counsel for appellant produced as his only witness the vice president of the importer herein, the Alpha Lux Co., Inc., who, in such capacity, had purchased large quantities of this same merchandise from the same exporter since 1931 or 1932. This witness had visited the plant of the manufacturer of this merchandise in August 1939, and he stated that while there:

> * * * I discussed the market conditions on a product which wasn't called Liquitol in Europe, but it was Liquitol as only sold under that trade name here in the United States. In Europe it has other names.

This witness also stated that since 1931 his company had been importing this same commodity from the same exporter in Germany, and that he knew whether or not this merchandise was sold in Germany; but when asked if he knew whether or not the price had been

fairly stable on this product since 1931, an objection thereto was sustained. Again when the witness was asked:

* * * has there been much variance in price of this commodity since you became familiar with it in 1931 and since you were buying it from this same manufacturer in Germany?

an objection was sustained. The witness was, however, permitted to explain that while he was in Holland:

I called on the man in his office in company with a man from Internationale, and the question of price came up, and Oelschlaeger showed me his records on orders that he had received over the past few years to demonstrate to me that we were paying the same as what he was selling the stuff for in Germany.

From the foregoing it is apparent to us that this witness was prepared, and we might add, also qualified, to testify, had he been permitted to answer, that there had been little, if any, variance in the price of this commodity in Germany since 1931. This answer, of course, would not have established all the statutory elements of foreign value, but once he received a favorable answer on the question of a continuing steady market over a long period of years, it is scarcely to be expected that counsel would not have proceeded to show the other elements of foreign value in Germany. And with a steady market for this product established in Germany for a number of years prior, and to within a short time of the date of exportation, together with the other necessary elements of statutory foreign value, certainly the plaintiff would have made a *prima facie* case.

When an importer is faced with almost unsurmountable difficulties in obtaining evidence, as was the importer herein, due to causes entirely beyond his control, it is our view that he should be given considerable latitude in the production of evidence, and by this we do not wish to be understood as suggesting that all rules of evidence be abandoned.

In addition to the testimony of the witness hereinbefore referred to, counsel for appellant also offered and there was received in evidence the following affidavit which was marked exhibit 5:

R. E. MARTIN, being first duly sworn, deposes and says: that he is a director and manager of N. V. Internationale Mineralen Compagnie of Den Haag, The Netherlands, and that he has been associated with the said company for more than fifteen years; that as director and manager of the said company he is personally familiar with the sale by his firm to the Alpha-Lux Co. Inc. of 192 Front Street, New York City, U. S. A., of the 45 drums of Liquitol C marked SCS Germany and the 20 drums of Liquitol B marked ⑧ Germany shipped on the S. S. *Edam* from Rotterdam on or about January 22, 1938, said shipment being covered by consular invoice number 298 certified at Rotterdam, The Netherlands, on January 21, 1938 before the American Vice Consul; that the aforesaid merchandise was manufactured wholly in Germany by the firm of Rheinische Formschlichte-Fabrik, Gebr. Oelschlaeger, located at Dusseldorf-Holthausen, Germany; that the

said merchandise was exported from Germany on or about January 13th, 1938; that the said merchandise was destined at the time of exportation from Germany to the Alpha-Lux Co. Inc. of 192 Front Street, New York City, U. S. A.; that the said merchandise did not enter into the trade or commerce of The Netherlands; that the said merchandise was not subjected to any process or treatment of any kind whatsoever but was exported from Rotterdam, The Netherlands, in the same condition and state that it left Germany; that the N. V. Internationale Mineralen Compagnie of Den Haag, The Netherlands, controls all sales for export from Germany of the Rheinische Formschlichte-Fabrik, Gebr. Oelschlaeger; that the latter firm only sells for export to the N. V. Internationale Mineralen Compagnie; that the Rheinische Formschlichte-Fabrik, Gebr. Oelschlaeger, is free to sell and does sell for home consumption in Germany merchandise the same as the above mentioned shipment to the Alpha-Lux Co. Inc. of New York City; that the designations "Liquitol C" and "Liquitol B" are trade names used by the Alpha-Lux Co. Inc. for such merchandise; that the same merchandise is sold for home consumption in Germany by the Rheinische Formschlichte-Fabrik, Gebr. Oelschlaeger, under the designation of Lunkerit, Lunkerpulver and Alurit; that his familiarity with the above matters is based upon his many years' experience in dealing in such merchandise, in his duties and experience as director and manager of the N. V. Internationale Mineralen Compagnie, in his dealings with the Rheinische Formschlichte-Fabrik, Gebr. Oelschlaeger, in the management and control of all sales for export, and his personal observations in The Netherlands and in Germany in the buying and selling of such merchandise.

This affidavit states definitely "that the said merchandise was destined at the time of exportation from Germany to the Alpha-Lux Co. Inc. of 192 Front Street, New York City, U. S. A.; that the said merchandise did not enter into the trade or commerce of The Netherlands * * *" and that the exporter "is free to sell and does sell for home consumption in Germany merchandise the same as the above mentioned shipment to the Alpha-Lux Co. Inc. of New York City * * *." These statements are not overcome by other evidence.

While counsel for appellee filed no cross-appeal in this case, he strenuously contends in his brief and oral argument that this affidavit was erroneously admitted in evidence upon the theory that the exporter or a member of the exporting firm had refused to furnish the special agent with any information regarding the cost of production of this merchandise, and cites in support of his position the second portion of section 402 (b) of the Tariff Act of 1930. The same situation was before this court in *Vita Food Products, Inc.* v. *United States,* 69 Treas. Dec. 1367, Reap. Dec. 3790. The court there stated:

As to the appeals covering shipments from the factory of Arnold Sorensen, Government counsel objected on the trial of the issue to the admission in evidence of an affidavit executed by one A. Lifschitz before the United States vice consul at Riga, and offered by counsel for the plaintiffs, upon the ground that the affiant had refused to permit the Treasury representative to examine his books or records. With reference to this affidavit, which refers to merchandise manufactured and sold by the firm of Arnold Sorensen, examination of the report of the Treasury representative, Collective Exhibit 7, shows that the affiant refused to permit inspection of his books or records by the Treasury representative, but a careful

reading of subparagraph (b) of section 402, by virtue of which the objection was made, is convincing that the objection of the Government to the admissibility of this affidavit on the ground that the affiant refused to permit such Treasury representative to inspect his books or records is not well founded, since the situation presented by the official record and these appeals shows clearly that as to none of the merchandise involved did the appraiser fail to find either a foreign, export, or United States value, but on the contrary based his findings in each instance on what he believed to be the foreign values of such or similar merchandise as that involved on the respective dates of shipment from Riga.

In the instant case there is no finding by the appraiser that foreign value, export value, or United States value could not be satisfactorily ascertained, but on the contrary the appraiser definitely found that United States value was the proper basis of appraisement. Therefore, the prohibition contained in the latter part of section 402 (b) does not apply to the affidavit in this case, and it follows that there was no error in the action of the lower court in admitting the same in evidence. The prohibition in said section 402 (b) is not governed by the instructions issued to the special agent designated to make an investigation, but is governed by a decision of the appraiser that foreign value, export value, or United States value cannot be satisfactorily ascertained. Consequently, the fact that the special agent making the investigation in this case was instructed to investigate the cost of production, does not operate to bring the affidavit in this case within the terms of the prohibition in said section 402 (b).

What has heretofore been said makes it unnecessary for us to specifically pass upon the remainder of the assignment of errors, hereinbefore set out.

Upon a full consideration of the record as made and for the reasons herein stated the judgment of the court below is reversed and the case remanded with instructions to grant a new trial to the end that witness A. de Macedo be permitted to testify regarding the market price at which he had purchased the involved merchandise in Germany since 1931, and for such other evidence as the parties may offer regarding the value of this merchandise in Germany and the court below may determine to be proper. Judgment will be rendered accordingly.