F. W. Hagemann *v.* United States

No. 7815.—
Entry No. 812604.

(Decided on remand [Reap. Dec. 7623] April 10, 1950)

*John D. Rode* for the plaintiff.

*David N. Edelstein*, Assistant Attorney General (*Samuel D. Spector*, special attorney), for the defendant.

COLE, Judge: Merchandise invoiced as "Liquitol B" and "Liquitol C," with prices of 20 reichsmarks and 16 reichsmarks per 100 kilos, respectively, less 2 per centum cash discount, was imported on February 7, 1938, at the port of New York by the Alpha Lux Co., Inc. Entry was made at the invoice prices, claimed to be representative of foreign value, section 402 (c) of the Tariff Act of 1930, as amended by the Customs Administrative Act of 1938 (19 U. S. C. § 1402 (c)), in Germany, which is alleged to be the country of exportation.

The shipment in question is covered by an invoice dated "Den Haag 19th January 1938," and showing N. V. Internationale Mineralen Cie of Den Haag (hereinafter referred to as "the Holland exporter") as the shipper and seller of the merchandise. The appraiser regarded the Netherlands as the country of exportation and in adopting United States value, section 402 (e) of the Tariff Act of 1930 (19 U. S. C. § 1402 (e)), as the basis for appraisement, found a value of $0.1218 per pound for "Liquitol B" and $0.06667 per pound for "Liquitol C," net packed.

The long delay, between the time of official appraisement and trial and submission of the case to the court, prompted the following statement by counsel for plaintiff:

Before stating the details, I would like to give the court a little bit of the background of this case. It first appeared on the calendar in January of 1939, and since that date has been continued, from time to time, in order to enable counsel to obtain what he thought was necessary and pertinent evidence.

The merchandise is a product of Germany, and it was shipped to the United States via Holland. Due to the war, it is evident, now, that I will be unable to obtain any further information whatsoever from Germany because the manufacturer's plant, I believe, in Dusseldorf was bombed and it is highly probable that it isn't in existence any longer—and I mean the individuals there too—because we haven't been able to communicate with them in the past four years, at least. Accordingly, I would like to present to the court what evidence I have. * * *

The two products under consideration are combinations of chemical compounds and are used in iron and steel foundries and steel-producing companies to keep metal fluid in castings or ingots so that "pipes" or cavities will not develop, but each is composed of different ingredients, adapting it for a specific use. "Liquitol C" is used on steel. "Liquitol B" contains a higher percentage of metal, creating greater exothermic reaction, and is used on cast iron.

The case has been the subject of a previous decision, *F. W. Hagemann* v. *United States*, 19 Cust. Ct. 258, Reap. Dec. 7390. It comes before me at this time on remand, *Same* v. *Same*, 21 Cust. Ct. 309, Reap. Dec. 7623. In my original decision, I held that plaintiff had

failed to make out a *prima facie* case, and accordingly granted defendant's motion for dismissal, invoking section 501 of the Tariff Act of 1930.

It was not argued before me at the first trial that the appraisement herein was made subsequent to enactment of the Customs Administrative Act of 1938, which amended said section 501 and directed that the court shall determine a value "notwithstanding that the original appraisement may for any reason be held invalid or void and that the merchandise or samples thereof be not available for examination," (19 U. S. C. (1946 ed.) § 1501 (a)). When this fact was brought to the attention of the second division on review, it became apparent that I was in error in granting the motion for dismissal, and that the Government never should have entered such motion because admittedly there was nothing to support it, a fact which was pointed out upon appeal, for the first time.

In the original disposition of the case, Reap. Dec. 7390, *supra*, no consideration was given to the question of the country of exportation because the record, at that time, failed to establish essential details required under the statutory definition of foreign value, section 402 (c), as modified, *supra*. Plaintiff's additional testimony, offered at the trial pursuant to the remand, materially changes the record as it relates to market conditions in Germany and as plaintiff's case is based entirely on the premise that Germany is the country of exportation, it becomes necessary, in the light of the supplementary proof, to discuss that issue and determine whether it is Germany, as claimed, or the Netherlands, as found by the appraiser.

Supporting the appraiser's action, if not the whole basis therefor, is a report (defendant's exhibit 6) of Treasury Representative Horace A. Browne, bearing date of July 8, 1938, and referring specifically to the consular invoice covering the shipment in question. The information contained therein was obtained from officials of "the Holland exporter," i. e., R. Laban, the manager, and R. E. Martin, director of the concern. This summation of the said report is pertinent:

"The Holland exporter" buys from a German producer a chemical base in sufficient quantities to keep about 10 tons on hand in Holland. After importation of the German-made substance, another chemical is added and the resulting article is called Liquitol. The name of the German supplier would not be disclosed, and because "it is a fabrication secret" no information was given concerning the material that is added in Holland to the German product.

Said R. E. Martin, director of "the Holland exporter," executed an affidavit (plaintiff's exhibit 5) on April 2, 1940, wherein he testified directly opposite to the information he contributed to the report, exhibit 6, *supra*, almost 2 years earlier. Referring to the products in question, his affidavit reads: "that the aforesaid merchandise

was manufactured wholly in Germany by the firm of Rheinische Formschlichte-Fabrik, Gebr. Oelschlaeger, located at Dusseldorf-Holthausen, Germany; that the said merchandise was exported from Germany on or about January 13th, 1938; that the said merchandise was destined at the time of exportation from Germany to the Alpha-Lux Co. Inc. of 192 Front Street, New York City, U. S. A.; that the said merchandise did not enter into the trade or commerce of The Netherlands; that the said merchandise was not subjected to any process or treatment of any kind whatsoever but was exported from Rotterdam, The Netherlands, in the same condition and state that it left Germany;   *   *   *."

The vice president of the importing corporation, who saw the merchandise on arrival, testified that it was received in steel drums of the type "only used in Germany," and that these containers were marked, indicating that Germany was the country of exportation.   He stated that early in 1938, when the present merchandise was exported, "the Holland exporter" had no facilities for processing the imported products.   His conclusion was based on information received during his visit to Holland in 1939 when he was shown installations "they had made that year for reprocessing this stuff in Holland."

In a report dated April 1, 1939 (defendant's exhibit 7), prepared by Treasury Attaché Paul Hermes—not the same treasury representative who made the earlier report, exhibit 6, *supra*—the Government agent states that he visited the office of the German manufacturer and talked with the firm's manager, Mr. Schafer, who then understood that the present merchandise was "shipped in transit through Holland without being in any way manipulated by the Dutch seller."

To remove the conflict between the contradictory proof, as hereinabove outlined, I am inclined to give the necessary added weight to the virtual admission in defendant's later report, exhibit 7, *supra*, that the shipment in question was wholly manufactured in Germany and that it did not enter the commerce of the Netherlands but went direct to its original destination, the importer herein.

Such circumstances make Germany the country of exportation. *Hensel, Bruckmann & Lorbacher, Inc., for a/c Fred'k. Blank & Co.* v. *United States*, Reap. Circ. 3207, and *United States* v. *Geo. E. Mallinson Importing Co., Inc.*, 14 Cust. Ct. 382, Reap. Dec. 6125.   In both of the cited cases, the merchandise was manufactured in one country and shipped to the United States through another country where the invoice was prepared and consulated.   The court's conclusion, holding the place of manufacture to be the country of exportation, was based on a finding that the goods were marked in the manufacturer's plant as intended for and destined to the importer in the United States and there was no intention to divert the shipment.   The preponderance in weight of the evidence herein is suf-

ficient for the same findings concerning shipment from Germany, where the products were manufactured, of the "Liquitol B" and "Liquitol C" in question.

I turn now toward determination of statutory foreign value in Germany. In this connection, there should be emphasized the difference between the record as originally made and its condition after the trial on remand.

Plaintiff's sole witness—the only one who testified at both hearings—was the vice president of the importing corporation, who has been associated therewith since 1933. He was in Germany, for 2 or 3 days, in August 1939, approximately 19 months after the date of shipment from the Netherlands of the present merchandise. He was not in Germany, either while the products were being manufactured or when they were forwarded to "the Holland exporter."

At the first trial, counsel for plaintiff questioned the witness concerning values in Germany since 1933, for the purpose of establishing that prices remained stable from then until the date of exportation of the present merchandise. Government counsel's objection to such testimony was sustained because I did not feel that the witness had shown sufficient familiarity with the foreign market prior to 1939 to testify concerning conditions as they existed theretofore. Despite the fact no exceptions to such rulings were taken at the trial by counsel for the importer, and plaintiff's assignment of errors in its application for review contained no reference to the exclusion of the line of testimony, the division, nevertheless, took occasion to comment very definitely upon the same in its opinion, Reap. Dec. 7623, *supra*, and said:

* * * it is apparent to us that this witness was prepared, and we might add, also qualified, to testify, had he been permitted to answer, that there had been little, if any, variance in the price of this commodity in Germany since 1931. This answer, of course, would not have established all the statutory elements of foreign value, but once he received a favorable answer on the question of a continuing steady market over a long period of years, it is scarcely to be expected that counsel would not have proceeded to show the other elements of foreign value in Germany. And with a steady market for this product established in Germany for a number of years prior, and to within a short time of the date of exportation, together with the other necessary elements of statutory foreign value, certainly the plaintiff would have made a *prima facie* case.

Having in mind my ruling at the original trial that the witness was not qualified to testify to market conditions in Germany over a period of time when he, admittedly, was not there, I referred during the course of the second trial, to the foregoing comment and frankly stated that I regarded the "position by the Division as compelling to permit this witness to testify pretty liberally, although I may be in disagreement." Accordingly, plaintiff's line of testimony, originally excluded, was admitted over objection by Government counsel and exceptions to such rulings were duly noted.

My determination of value is based on the proof embodied in the combined records made at both trials. Plaintiff's evidence, directed toward establishing the essential elements of foreign value, section 402 (c), as modified, *supra*, is included in the importer's oral testimony, supported by orders received by the German manufacturer (plaintiff's exhibits 10 and 11), and the affidavit, exhibit 5, *supra*. Both witnesses showed familiarity with conditions in the foreign market, their knowledge having been acquired not only through experience in dealing with the commodities under consideration but also by personal contact with the German manufacturer. Their combined statements disclose that merchandise the same as "Liquitol B" and "Liquitol C" was freely offered for sale and sold at the time of exportation of the present merchandise, to all purchasers in the principal market of Dusseldorf, Germany, in the ordinary course of trade, in wholesale quantities that did not vary according to the number or quantity purchased, at prices equivalent to the invoice and entered values; and that the German market for such merchandise was regular and prices remained stable from 1933 up to the time of exportation of the shipment under consideration. Defendant's reports, exhibits 6 and 7, *supra*, contain nothing to dispute the foregoing facts.

The record also supports the conclusion that "the Holland exporter" is the agent of the German manufacturer, and that the said exporter sells exclusively to the importer herein. Such circumstances definitely negative the existence of export value, section 402 (d) of the Tariff Act of 1930.

For reasons hereinabove set forth, I find as matter of fact and hold as matter of law:

(1) That the merchandise in question consists of "Liquitol B" and "Liquitol C."

(2) That the country of exportation is Germany.

(3) That a principal market in Germany is Dusseldorf.

(4) That such merchandise was freely offered for sale and sold in the said principal market to all purchasers, in the ordinary course of trade, at prices that did not vary according to the number or quantity purchased, such prices being equivalent to the invoice and entered values of the merchandise in question.

(5) That the exportation of such merchandise was restricted or controlled, and therefore no export value, section 402 (d), *supra*, exists for the products in question.

(6) That the proper basis for appraisement of this "Liquitol B" and "Liquitol C" is foreign value, section 402 (c), as modified, *supra*, and that such statutory values are the entered values.

Judgment will be rendered accordingly.