UNITED STATES *v.* F. W. HAGEMANN

No. 8007.—

Entry No. 812604.

Second Division, Appellate Term

(Decided May 29, 1951)

*David N. Edelstein*, Assistant Attorney General (*Samuel D. Spector*, special attorney), for the appellant.
*John D. Rode* for the appellee.

Before LAWRENCE, FORD, and EKWALL, Judges; EKWALL, J., opinion concurring in part

FORD, Judge: This application for a review of the decision and judgment of the trial court was filed under the provisions of title 28 U. S. C. § 2636 (a). The involved merchandise is known by the trade name of Liquitol B and C. It "* * * is a combination of chemical compounds that are used in the iron foundries, steel foundries, and steel-producing companies use it." It was entered at the port of New York upon an invoice dated at Den Haag, Netherlands. The Liquitol B was invoiced and entered at RM 20 per 100 kilos, less 2 per centum on the basis of foreign value, and was appraised at $0.1218 per pound, net packed, on the basis of United States value. The Liquitol C was invoiced and entered at RM 16 per 100 kilos, less 2 per centum, on the basis of foreign value, and was appraised at $0.0667 per pound, net packed, on the basis of United States value.

This case was the subject of review by the second division, *F. W. Hagemann* v. *United States*, 21 Cust. Ct. 309, Reap. Dec. 7623, wherein the judgment of the trial court was reversed:

* * * and the case remanded with instructions to grant a new trial to the end that witness A. de Macedo be permitted to testify regarding and market price at which he had purchased the involved merchandise in Germany

since 1931, and for such other evidence as the parties may offer regarding the value of this merchandise in Germany and the court below may determine to be proper. * * *

At the second trial, witness A. de Macedo was permitted to testify in accordance with the views expressed by this division, as set out above, and other evidence was also offered and received by the trial court. With reference to the record as it is now constituted, the trial court stated:

* * * Plaintiff's additional testimony, offered at the trial pursuant to the remand, materially changes the record as it relates to market conditions in Germany and as plaintiff's case is based entirely on the premise that Germany is the country of exportation, it becomes necessary, in the light of the supplementary proof, to discuss that issue and determine whether it is Germany, as claimed, or the Netherlands, as found by the appraiser.

The following statement appears in the special agent's report, exhibit 6:

* * * After importation into Holland and payment of the Dutch import duty of 4%, another chemical is added to the German-made product and the resulting article is called Liqutol. * * *

The following is a portion of a letter from the Holland concern to the special agent, which also forms a part of exhibit 6:

We also cannot disclose you the material we are putting at Rotterdam in Liquitol we are receiving from Germany, as it is a fabrication secret.

However, in the report of another special agent, exhibit 7, which was made subsequent to the previous report, exhibit 6, and as a result of a further investigation of this matter, the following statement is made:

* * * Although he understood now that the said two shipments were shipped in transit through Holland without being in any way manipulated by the Dutch seller, he reaffirmed the firm's refusal to furnish any information regarding the cost of production.

Exhibit 5 is an affidavit executed by the manager of N. V. Internationale Mineralen Compagnie of Den Haag, The Netherlands, and in which the affiant states that he has been associated with the said company for more than 15 years, and that as director and manager of the said company he is personally familiar with the sale of the involved merchandise to the appellee herein, and—

* * * that the aforesaid merchandise was manufactured wholly in Germany by the firm of Rheinische Formschlichte-Fabrik, Gebr. Oelschlaeger, located at Dusseldorf-Holthausen, Germany; * * * that the said merchandise did not enter into the trade or commerce of The Netherlands; that the said merchandise was not subjected to any process or treatment of any kind whatsoever but was exported from Rotterdam, The Netherlands, in the same condition and state that it left Germany; * * * that the Rheinische Formschlichte-Fabrik, Gebr. Oelschlaeger, is free to sell and does sell for home consumption in Germany merchandise the same as the above mentioned shipment to the Alpha-Lux Co.

Inc. of New York City; * * * that his familiarity with the above matters is based upon his many years' experience in dealing in such merchandise, in his duties and experience as director and manager of the N. V. Internationale Mineralen Compagnie, in his dealings with the Rheinische Formschlichte-Fabrik, Gebr. Oelschlaeger, in the management and control of all sales for export, and his personal observations in The Netherlands and in Germany in the buying and selling of such merchandise.

In holding that Germany, and not the Netherlands, was the country of exportation of the involved merchandise, the trial court stated:

To remove the conflict between the contradictory proof, as hereinabove outlined, I am inclined to give the necessary added weight to the virtual admission in defendant's later report, exhibit 7, *supra*, that the shipment in question was wholly manufactured in Germany and that it did not enter the commerce of the Netherlands but went direct to its original destination, the importer herein.

Such circumstances make Germany the country of exportation. *Hensel, Bruckmann & Lorbacher, Inc., for a/c Fred'k. Blank & Co. v. United States*, Reap. Circ. 3207, and *United States v. Geo. E. Mallinson Importing Co., Inc.*, 14 Cust. Ct. 382, Reap. Dec. 6125. In both of the cited cases, the merchandise was manufactured in one country and shipped to the United States through another country where the invoice was prepared and consulated. The court's conclusion, holding the place of manufacture to be the country of exportation, was based on a finding that the goods were marked in the manufacturer's plant as intended for and destined to the importer in the United States and there was no intention to divert the shipment. The preponderance in weight of the evidence herein is sufficient for the same findings concerning shipment from Germany, where the products were manufactured, of the "Liquitol B" and "Liquitol C" in question.

We are in accord with the above findings of the trial court that Germany, and not the Netherlands, is the country from which the involved merchandise was exported. Such finding is accordingly affirmed.

With reference to the question of the value of the involved merchandise for home consumption in Germany, the trial court found as follows:

My determination of value is based on the proof embodied in the combined records made at both trials. Plaintiff's evidence, directed toward establishing the essential elements of foreign value, section 402 (c), as modified, *supra*, is included in the importer's oral testimony, supported by orders received by the German manufacturer * * * and the affidavit, exhibit 5, *supra*. Both witnesses showed familiarity with conditions in the foreign market, their knowledge having been acquired not only through experience in dealing with the commodities under consideration but also by personal contact with the German manufacturer. Their combined statements disclose that merchandise the same as "Liquitol B" and "Liquitol C" was freely offered for sale and sold at the time of exportation of the present merchandise, to all purchasers in the principal market of Dusseldorf, Germany, in the ordinary course of trade, in wholesale quantities that did not vary according to the number or quantity purchased, at prices equivalent to the invoice and entered values; and that the German market for such merchandise was regular and prices remained stable from 1933 up to the time of exportation of the shipment under consideration. Defendant's reports, exhibits 6 and 7, *supra*, contain nothing to dispute the foregoing facts.

The foregoing findings of the trial court are amply supported by the weight of the evidence in the present record and by the authorities on the subject, and are accordingly affirmed. *United States* v. *Papazion*, Reap. Circ. 36357; *Hensel, Bruckmann & Lorbacher, Inc.* v. *United States, supra; Geo. E. Mallinson Importing Co., Inc.* v. *United States*, 13 Cust. Ct. 331, Reap. Dec. 6030; and *United States* v. *Geo. E. Mallinson Importing Co., Inc., supra.*

Upon a full consideration of the entire record we find as facts:

1. That the merchandise involved herein consists of Liquitol "B" and Liquitol "C."

2. That the involved merchandise was exported from Germany.

3. That the principal market for such merchandise in Germany was Dusseldorf.

4. That such or similar merchandise was freely offered for sale and sold for home consumption in said principal market to all purchasers, in the ordinary course of trade, at prices which did not vary according to the quantity purchased, and that such prices were equivalent to the invoiced and entered values herein.

5. That the exportation of such or similar merchandise was restricted or controlled in Germany.

We, therefore, conclude, as matter of law:

1. That the proper basis for the determination of the value of the involved merchandise is foreign value, as that value is defined in section 402 (c) of the Tariff Act of 1930, as amended by the Customs Administrative Act of 1938.

2. That there was no export value for said merchandise.

3. That the proper dutiable foreign value of the involved merchandise was as set out in finding of fact No. 4.

The decision and judgment of the trial court are accordingly affirmed. Judgment will be rendered accordingly.

## OPINION CONCURRING IN PART

EKWALL, Judge: I agree with my colleagues insofar as they find that Germany is the country of exportation and that foreign value, as defined in section 402 (c) of the Tariff Act of 1930, as amended, is the proper basis for valuation. However, I am unable to agree that such value is represented by the entered values. Those values are RM 2 higher than the prices at the factory at Dusseldorf, Germany, one of the principal markets. The record is lacking in evidence that the prices at the factory represented a delivered price throughout the country, regardless of destination. In fact, the only evidence we have before us is the testimony of the vice president of the importing company. His testimony on this point is as follows:

* * * I paid a visit with Mr. Martin, of Internationale, to the Oelschlager plant in Dusseldorf, and when there the question of prices were [*sic*] discussed as

to whether or not we were paying more than the German market, and they showed us their orders, which convinced me that we were basically paying the same as the German trade was, and that the differential in price was due to transportation costs, just as if we had taken the material through the port of Hamburg we would have had to pay the freight from Dusseldorf to Hamburg. We are comparing the f. o. b. Dusseldorf and f. o. b. Rotterdam price, and the differential is two marks, which is the Rhine freight.

X Q. Do you know whether that is a Rhine freight?—A. I didn't say I knew, I said as we were paying two marks more, that would naturally be transportation, but the man that handled the stuff might put other charges in. You have some things as overhead, etc.

X Q. You paid a profit to the fellow in Holland?—A. I imagine we did.

I am not satisfied that this item of RM 2, whether we consider it inland freight or inland freight plus other charges, was included in the price at the factory. As I view the record it was a sum which this importer was obliged to pay in order to ship his merchandise from Dusseldorf to Rotterdam. On this record I can find no justification for including it in the freely offered price to all purchasers for home consumption, in the usual course of trade and in the usual wholesale quantities, in the principal markets of Germany.

It is, therefore, my opinion that the foreign values are as follows:

> RM 14.00 per 100 kilos for the Liquitol C
> RM ·18.00 " " " " " " B
> Both less 2 per centum for cash.
> Both f. o. b. Dusseldorf.