MAIER, MORTON & BROWNE *v.* UNITED STATES (No. 2065).[1]

CONSTRUCTION, PARAGRAPH R, SECTION III, TARIFF ACT OF 1913—"COUNTRY FROM WHENCE IMPORTED."

When goods are imported from Canada, Canada, and not the British Empire, is the "country from whence imported" under paragraph R, section III, tariff act of 1913. Goods manufactured in England, shipped to Canada in bond, and thence to this country, were properly appraised at their market value in Canada; and, where they were entered at their market value in England, it was proper for the appraiser to advance the entered value to the Canadian market value; and the additional duty provided for undervaluation by paragraph I, section III, was incurred.

[1] T. D. 38753.

United States Court of Customs Appeals, June 2, 1921.

APPEAL from Board of United States General Appraisers, G. A. 8361 (T. D. 38466).

[Affirmed.]

*Walden & Webster (Henry J. Webster* of counsel) for appellants.
*Bert Hanson,* Assistant Attorney General, for the United States.

[Oral argument May 6, 1921, by Mr. Webster and Mr. Hanson.]

Before SMITH, BARBER, DE VRIES, and MARTIN, Judges.

MARTIN, Judge, delivered the opinion of the court:

The merchandise in this case consists of certain khaki-colored flannels composed of wool and cotton, known in the trade as meltons. They were imported into this country on July 17, 1917, and were dutiable under paragraph 289 of the tariff act of October 3, 1913, at the rate of 30 per cent ad valorem if valued at more than 50 cents per pound, otherwise at 25 per cent ad valorem.

The goods were manufactured at Leeds, England, and were sold by the manufacturers to the Montreal Shirt & Overall Co. of Montreal, Canada. Afterwards the Montreal company sold them to the appellants who are merchants in this country.

At the time of these transactions the Dominion of Canada had imposed a customs duty of 30 per cent ad valorem and also a special war tax of 5 per cent ad valorem·upon goods of this character when imported into Canada, whether from England or elsewhere. But as a matter of business economy the Montreal company had caused the importations to be shipped to Montreal in bond, and they were exported to this country without being taken out of bond in Canada. The Canadian import duty therefore was never in fact assessed upon them.

The importers entered the merchandise at the port of New York, upon an invoice in which the quantity thereof was given as $57,931\frac{3}{4}$ yards, and the dutiable value thereof declared at 48 cents per yard, the total value accordingly being $27,807.24. At the time of entry the following statements also appeared upon the face of the invoice, viz: "Product of England." "Freight from England to Canada included in above price." "Canadian duty not included, $7,844.55."

The appraiser, however, advanced the entered value of the merchandise from the invoice declaration of 48 cents per yard to 60 cents per yard, and made the following indorsements upon the entry, viz: "Appraiser advances to make market value $0.12 per yard net." "Makes value $0.60 per yard net." A computation of these figures will disclose the fact that the dutiable value of the merchandise was thereby found to be $34,759.05, this being an advance of $6,951.81 as compared with the value declared in the entry.

The importers thereupon appealed to a reappraisement of the merchandise, and this appeal was tried upon testimony by a single general appraiser, who sustained the action of the local appraiser.

The importers then appealed to a re-reappraisement, and this was submitted upon the same record to a board of three general appraisers, who likewise sustained the action of the local appraiser.

Thereupon the collector assessed duty upon the merchandise at the rate of 30 per cent ad valorem under paragraph 289, supra, and also assessed so-called additional duties under paragraph I, section III, of the act, because of the appraiser's advance in value as aforesaid.

The importers protested against the assessment, claiming that the several appraisements aforesaid had proceeded upon a wrong principle of law, and were illegal and void. The alleged error of which the protestants complained was this, that the several appraisers had appraised the merchandise at its market value in the principal markets of Canada upon the assumption that Canada was the country of exportation, whereas according to the claim of the importers Canada is not a country, but is only a local part of the British Empire, and consequently the merchandise should have been appraised at its market value in the principal markets for such goods of the British Empire taken as an entirety, and these markets they contend were not in Canada but in England. They claim also that the market value of the goods in the principal markets of England at the time was 48 cents per yard, which is the value declared by the entrants in the present case.

At this point it may be noted that the importers do not claim that these goods were imported into this country from England, nor could such a claim be sustained upon the record. For while it is true that they were manufactured in England, yet they had afterwards become the property of the Canadian company, and had been sold as such to the appellants herein. It must therefore be conceded that they were Canadian as distinguished from English importations when they were entered at the ports of this country.—Customs Regulations, 1915 (art. 577); Booth case (T. D. 22338, G. A. 4719). The principles upon which the appellants rely in their protest would therefore apply alike to all ad valorem merchandise when imported from Canada whether manufactured in Canada itself or elsewhere.

The following is a copy of the operative parts of the protest:

1. That the Dominion of Canada, from which the merchandise was imported, is part of the British Empire, subject to the same supreme executive and legislative control.

2. That the value fixed by the appraising officers purports to be only a local value in Canada, not prevailing in any other part of the British Empire.

3. That it was the legal duty of the appraising officers to find a market value prevailing generally in the country of exportation, not some varying local value in one part of such country, affected by local taxes or other local conditions.

4. That the particular place in a foreign country from which merchandise may be shipped is not to be regarded in appraising imported merchandise, and that the appraising officers exceeded their legal discretion in finding a value at the place of exportation instead of in the country of exportation generally.

For convenience of reference the pertinent part of paragraph R, hereinafter referred to, is copied as follows:

R. That whenever imported merchandise is subject to an ad valorem rate of duty, or to a duty based upon or regulated in any manner by the value thereof. the duty shall be assessed upon the actual market value or wholesale price thereof, at the time of exportation to the United States, in the principal markets of the country from whence exported; that such actual market value shall be held to be the price at which such merchandise is freely offered for sale to all purchasers in said markets, in the usual wholesale quantities, and the price which the seller, shipper, or owner would have received, and was willing to receive, for such merchandise when sold in the ordinary course of trade in the usual wholesale quantities.

The Board of General Appraisers overruled the protest, and the importers now appeal.

We may say at once upon the record that the local appraiser plainly proceeded upon the theory that Canada is a "country," and that it was the country from whence these goods were exported into the United States. Accordingly he appraised them at their market value in the principal markets of Canada, and his action was sustained by the appellate appraisers. It is also clear upon the record that the goods in fact possessed a market value of 60 cents per yard in the principal markets of Canada at the time, but that their market value in the principal English markets was only about 48 cents per yard. The present issue therefore resolves itself into a single question, namely, whether Canada is a "country" within the purview of paragraph R, supra, and whether when ad valorem goods are imported into this country from Canada they should be appraised for duty at their market value in the principal markets of Canada, or in those of the British Empire at large wherever they may be found. For if it be held that such importations should be appraised according to the principal markets of the British Empire then it must be conceded that in this case the appraiser proceeded "on a wrong principle, contrary to law," and reached a wrong result. In such event his action would be impeachable by protest.—Oberteuffer v. Robertson (116 U. S., 490) Robertson v. Frank (132 U. S., 17).

In the year 1855 the case of Stairs v. Peaslee (18 How., 521) was decided by the Supreme Court of the United States. The case related to an importation of cutch which had been invoiced and shipped from Halifax, and was entered for ad valorem duty at the port of Boston. Cutch was then a product of the East Indies only, the

principal market for which in India was Calcutta, while London and Liverpool were the principal markets for it in Great Britain. The governing statute required that the merchandise should be appraised at its market value in the principal markets of the country from which it was exported. The appraiser appraised the cutch at its market value in London and Liverpool and not Halifax, upon grounds similar to those advanced by the appellants in this case. The court sustained the appraisement, saying:

The word "country" in the revenue laws of the United States has always been construed to 'embrace all the possessions of a foreign state, however widely separated, which are subject to the same supreme executive and legislative control.

The language just quoted was thereupon incorporated within our departmental instructions, and now appears as article 576, Customs Regulations, 1915.

Several years after the decision in the case of Stairs *v.* Peaslee, supra, the British Parliament enacted the British North America act of 1857 as an organic act whereby the political relations of the Dominion of Canada were fundamentally changed, and by force of that act and the amendments thereof an increasing measure of autonomy was conferred upon its government. Among other powers now possessed by the Dominion of Canada is that of establishing its own system of taxation, including the imposition of customs duties upon merchandise imported thereto from the United States and other countries, whether from Great Britain or any other member of the British Empire.—(See British North America Acts, 1867–1907, Parmelee, printer, Ottawa, 1913, secs. 53, 91, 122, pp. 10, 16, 23.)

In the year 1891 the Board of General Appraisers decided the Jackson case (T. D. 12145, G. A. 1007). The case related to the appraisement for ad valorem assessment of certain merchandise imported into this country from Montreal, and the board held that they must be appraised according to the principal markets of the British Empire as the true country of exportation, and not those of Canada alone. The board expressed some doubt as to the correctness of this decision in view of the changed political status of the Dominion of Canada under the British North America acts, but it regarded the rule announced in the Stairs-Peaslee case as still binding upon it.

We think, however, that since the foregoing decisions were announced Congress has clearly indicated its intention that in so far as relates to customs relations between this country and Canada, the latter shall be regarded as a "country," and consequently be included within the application of that word as used in paragraph R, supra.

In support of this statement we cite the "act to promote reciprocal trade relations with the Dominion of Canada, and for other purposes,"

enacted July 26, 1911 (U. S. Stats. L., vol. 37, p. 4). In this act it was provided that certain rates of duty should thereafter be imposed upon certain articles, "the growth, product or manufacture of the Dominion of Canada, when imported therefrom into the United States." And by section 5 of the act authority was given to the President of the United States "to negotiate trade agreements with the Dominion of Canada wherein mutual concessions are made looking toward freer trade relations and the further reciprocal expansion of trade and commerce." It is a matter of public record that this legislation followed upon tentative agreements reached by negotiations carried on directly by representatives of Canada and the United States, and that in various public documents in relation thereto Canada was referred to as a "nation" and as a "government." And in the case of American Express Co. et al. v. United States (4 Ct. Cust. Appls., 146; T. D. 33434), wherein the foregoing legislation was in question, the following language was used by this court (p. 147):

Many of the questions discussed in the brief of the importers' counsel have been eliminated by concessions made by the Assistant Attorney General in his brief and on argument. It was argued before the board—and the argument found some favor—that Canada was not a nation within the meaning of the favored-nation clause. But it is now assumed by counsel for the Government that Canada is an autonomy with which a treaty was made, and that the court will not pause to inquire as to the municipal government of such autonomy. It is assumed that it is a nation for treaty purposes, and this may well be assumed, as this Government has itself so treated it.

We therefore hold that Canada is the country from whence these goods were exported into the United States, and that the appraiser proceeded upon a correct principle when he appraised the merchandise at its market value in the principal markets thereof.

We may repeat that there is no testimony in the record tending to disprove the finding of the appraiser that Montreal was a "principal market" of Canada, nor to impeach the valuation of 60 cents per yard as the actual value of the goods in that market. It is contended by the appellants that the appraiser in fact found the appraised value aforesaid by simply adding the Canadian customs duty to the price of the goods in England. This the appraiser denies, and his denial is sustained by the record. Nor could the appraiser's finding be overthrown in such a controversy by the mere preponderance of the evidence only.

The conclusion thus reached is distinctly consistent with our decision in the case of Sonneborn v. United States (1 Ct. Cust. Appls., 443; T. D. 31504); see Cliquot's Champagne (3 Wall., 114, 142), and United States v. Passavant (169 U. S., 16, 25).

The decision of the board is therefore *affirmed.*