## UNITED STATES v. GEO. E. MALLINSON IMPORTING CO., INC.

**No. 6125.**—Invoice dated Hong Kong, July 21, 1941.
Certified July 22, 1941.
Entered at New York, N. Y., September 15, 1941.
Entry No. 713887.

### Third Division, Appellate Term

(Decided April 9, 1945)

*Paul P. Rao*, Assistant Attorney General (*Samuel D. Spector* and *Daniel I. Auster*, special attorneys), for the appellant.
*John D. Rode* (*Jacob L. Klingaman* of counsel) for the appellee.

EKWALL, Judge: This is an application for review of a decision rendered by a single judge reported as Reap. Dec. 6030. The merchandise involved consists of sea-grass rugs or squares the product of French Indo-China which left there in July 1941, for Hong Kong from whence they were shipped to the United States. They were entered at $.1375 per square foot, Hong Kong currency, plus packing. They were appraised at $.1375 per square foot, Hong Kong currency, plus forwarding expenses Haiphong to Hong Kong, marine insurance Haiphong to Hong Kong, storage at Hong Kong, telegram Haiphong to Hong Kong, and packing, as invoiced. Both the entered and appraised value represent export value.

The importer contends that the entered value represents the proper dutiable value of the rugs, which value does not include the charges from Haiphong to Hong Kong. It is the contention of the Government that the charges were properly added to the *per se* price by the appraiser.

The question before us is which city, Haiphong in French Indo-China, or Hong Kong, is the principal market for these goods.

The judge below found that Haiphong is one of the principal markets for the rugs; that French Indo-China is the country of exportation; that the rugs are properly dutiable on the basis of export value as that value is defined in section 402 (d) of the Tariff Act of 1930; that such export value is the entered value of $.1375 per square foot, Hong Kong currency, plus packing.

The only evidence produced consists of an affidavit on behalf of the importer (exhibit 1); a Customs Information Exchange report (exhibit 2), and a copy of a letter from the manufacturer of this merchandise offered and received on behalf of the Government (exhibit 3).

The affidavit is made out by the vice president of the plaintiff corporation; and states that he was familiar with the rugs covered by the instant importation and with the details of purchase and shipment of said rugs; that Cheong Lee, from whom they were purchased, is one of the largest manufacturers of such or similar straw rugs in French Indo-China, where he maintains a factory near the town of Haiphong. This affiant further stated that he had visited French Indo-China, and especially the town of Haiphong, many times during the course of the past several years, his latest visit having taken place in January 1941, in an effort to acquaint himself with market conditions in that country and to study and observe the numerous sources of supply of various kinds of rugs with a view to purchasing the same for George E. Mallinson Importing Co., Inc., the importer herein. During the course of these visits he talked to many manufacturers and dealers and also visited numerous factories where various kinds

of rugs were made, and inspected samples of rugs shown to him by dealers and manufacturers. Based upon the experience thus obtained he was able to state that Haiphong is one of the principal markets in French Indo-China for straw rugs the same as or similar to those here involved; that such or similar rugs are offered for sale and sold on a square-foot basis, and are usually and in the ordinary course of trade sold both for home consumption and for exportation to the United States without any discount because of the quantity purchased; that the usual wholesale quantity is 5,000 square feet or more; that on or about the date of exportation of the instant merchandise such or similar straw rugs were freely offered for sale to all purchasers in Haiphong in the usual wholesale quantities and in the ordinary course of trade for exportation to the United States, inclusive of the cost of all containers and coverings of whatever nature and all other costs, charges, and expenses incident to placing the merchandise in condition packed ready for shipment to the United States, at a price of Hong Kong $.1375 per square foot, plus packing; that the price for home consumption was no higher than this price of $.1375; that such or similar rugs were freely offered to this importer by several different manufacturers and dealers in Haiphong at prices no higher than this $.1375 price; that the manufacturer Cheong Lee made the straw rugs according to designs and specifications submitted by this importer; that the order was placed on May 29, 1941; that when these rugs left the establishment of the manufacturer in French Indo-China they were destined for shipment to the United States and had been manufactured solely and expressly for this importer; that they were definitely marked for this importer; that there was no diversion of the shipment nor any intention to divert the shipment after it left French Indo-China. The affiant further stated that the rugs were shipped to the United States by way of Hong Kong, were not held for offer or sale to all buyers in Hong Kong but were merely sent via Hong Kong for lading aboard a steamer sailing to the United States; that they never entered the commerce of Hong Kong or any other country, and that they remained in Hong Kong only a short time to permit their inspection and the preparation of shipping documents by the purchasing agents for the importer.

Government exhibit 2, a letter of the Customs Information Exchange, addressed to the appraiser at Cleveland, has attached thereto copies of four letters from the Hong Kong Office of the Associated Merchandising Corporation to their New York office relative to freight rates from Haiphong to Hong Kong. These letters relate to the difficulty of obtaining space on steamers, the increase in the freight rate, and the fact that the shipper "has to pay large sums of squeeze" in Haiphong, and the writer requests that the manufacturer

be given a larger allowance for freight charges. We quote from the letter of December 18, 1940, as follows:

As all Tonkins are bought by us ex warehouse, Hongkong, all freight charges from Indo-China to Hongkong should, therefore, be borne by the manufacturer; but in view of this heavy loss the manufacturer requests us to cable the stores and find out if he will be given a special allowance of Hongkong 11 cents per sq. yard for part of this excessive freight charges. If he is given this allowance, he says he will be encouraged to spend more to get freight space for quick shipments of all the stores Tonkin rugs and squares on orders to Hongkong as the shipping dates of the orders are now due.

Exhibit 3 produced by the Government consists of a copy of a letter headed Cheong Lee Co., Hong Kong, under date of February 28, 1941, to one William J. B. Waite, San Francisco, referring to various shipments of sea-grass squares. This letter is unsigned. The Government in its brief contends that it definitely shows that Cheong Lee, the exporter herein, had an office in Hong Kong, that he made all his shipments from Hong Kong, and that he offered all of his merchandise at Hong Kong. It is true that the letter shows that Cheong Lee had an office in Hong Kong, but we fail to find that the other contentions made by the Government are supported by the statements therein. It is also true that Cheong Lee was shipping from Hong Kong and that an offer was made to a Mr. Waite of a quantity of sea-grass squares (natural) at a price f. o. b. Hong Kong. However, we find nothing in this letter to show that there was no other principal market for these goods. Moreover, there is nothing in said letter in the way of proof that the offer was made to all purchasers, nor is there any proof that the rugs mentioned therein were such as or similar to the rugs here involved.

The judge below found that the facts of this case as presented by the evidence are to the same effect as those in the case of *Hensel, Bruckmann & Lorbacher, Inc.* v. *United States*, Reap. Dec. 3132, affirmed in Reap. Dec. 3207. In the case cited an importation of wallpaper was sold by a corporation located in Basle, Switzerland, to a firm in New York. The merchandise was manufactured in Germany by a subsidiary company, shipped in bond through Swiss territory, and sailed from a port in Germany for New York. The invoice, which was made out in United States currency, was certified in Switzerland. The court held that the merchandise was intended for export to the United States and that there was no proof that the whole or any part thereof was diverted or was intended to be diverted from its original destination. It therefore held that the country of exportation was Germany. It is true that the record in that case was much fuller than the record before us in the instant case. However, we think the reasoning may be applied to the case before us, and it is the opinion of the court and we so hold that the presumption of correctness attaching to the appraiser's finding of value has been over-

come by the evidence produced on the part of the appellee, and that such evidence is not refuted by statements on the invoice. Invoice statements are not conclusive. See *United States* v. *Meadows, Wye & Co. (Inc.)*, T. D. 41622, 49 Treas. Dec. 959. In that case the court, after discussing certain cases cited by the Government, said:

As against these cases, and the reasons assigned by the Government, an examination of the authorities sustains the proposition that an invoice is not such a sacred instrument that it can not be disputed and that the origin of the merchandise, its actual value, can be proven, notwithstanding that in each of these instances there may be statements on the invoice and entry to the contrary.

We further hold that the single judge committed no error in relying on the statements contained in the affidavit (exhibit 1), which statements were sworn to by one who was well qualified, and who had made a study of the market conditions in French Indo-China and had visited that country on various occasions and interviewed many manufacturers of and dealers in these and similar rugs. There appears to be no dispute as to the *per se* value of these rugs, the only question in dispute being the addition thereto of the charges to Hong Kong, which question involved the location of the principal market.

For the foregoing reasons we find that Haiphong is one of the principal markets for rugs such as or similar to those here involved; that they are there sold or freely offered for sale on the basis of a square foot; that the usual wholesale quantity is 5,000 square feet or more; that in July 1941, rugs such as or similar to those here involved were freely offered for sale to all purchasers in Haiphong, French Indo-China, in the usual wholesale quantities and in the ordinary course of trade for exportation to the United States at a price of $.1375 per square foot, Hong Kong currency, plus packing; that in July 1941, the price for home consumption was no higher. From these findings of fact we conclude that French Indo-China is the country of exportation; that the export value as defined in section 402 (d) of the Tariff Act of 1930 is the proper basis of value; that said export value is no higher than the foreign value and is $.1375 per square foot, Hong Kong currency, plus packing.

The decision of the single judge is affirmed.