## F. W. HAGEMANN v. UNITED STATES

**No. 7390.**—Invoice dated Den Haag, Netherlands, January 19, 1938.
Certified January 21, 1938.
Entered at New York, N. Y., February 7, 1938.
Entry No. 812604.

(Decided September 29, 1947)

*John D. Rode* for the plaintiff.

*Paul P. Rao,* Assistant Attorney General (*Samuel D. Spector,* special attorney), for the defendant.

COLE, Judge: The Alpha Lux Co., Inc., imported at the port of New York, on February 7, 1938, a shipment of merchandise, covered by an invoice dated, "Den Haag 19th January 1938," and described thereon as "Liquitol B" and "Liquitol C," showing prices of 20 reichsmarks and 16 reichsmarks per 100 kilos, respectively, less 2 per centum cash discount.

The importer entered at the invoice values which the appraiser advanced to $0.1218 per pound for "Liquitol B" and $.0667 per pound for "Liquitol C," net, packed; the official appraisements being based on United States value, section 402 (e) of the Tariff Act of 1930 (19 U. S. C. § 1402 (e)).

In this appeal for reappraisement, the importer seeks to sustain its entered values, contending that they are representative of statutory foreign value, section 402 (c) of the Tariff Act of 1930, and that there is no export value, section 402 (d) of the Tariff Act of 1930.

That this case was first docketed in 1939, and not tried and briefed for submission to the court before the middle of this year, resulted in the following explanation by counsel for plaintiff in his opening statement:

> Before stating the details, I would like to give the court a little bit of the background of this case. It first appeared on the calendar in January of 1939, and since that date has been continued, from time to time, in order to enable counsel to obtain what he thought was necessary and pertinent evidence.
>
> The merchandise is a product of Germany, and it was shipped to the United States via Holland. Due to the war, it is evident, now, that I will be unable to obtain any further information whatsoever from Germany because the manufacturer's plant, I believe, in Dusseldorf was bombed and it is highly probable that it isn't in existence any longer—and I mean the individuals there too—because we haven't been able to communicate with them in the past four years, at least. Accordingly, I would like to present to the court what evidence I have.
> * * * (R. p. 2.)

Because of the foregoing situation, the writer of this opinion, who presided at the trial, was liberal in permitting the plaintiff to

present available testimony. The record as made fully supports the apprehension counsel expressed, for it is grossly inadequate to warrant a finding for the plaintiff.

The vice president of the importing corporation, an electrical engineer with more than 13 years' experience with the merchandise in question, explained that "Liquitol B" and "Liquitol C" are trade names adopted by his company for substances generally known in Germany as "Lunkerpulver" or "Lunkerit," and referred to more specifically by the German manufacturer of the instant merchandise as "Alurit." The imported products consist of a combination of chemical compounds and are used in iron and steel foundries and steel-producing companies to prevent rapid cooling and to desulfurize molten metal. The letters differentiate the substances for the particular metal on which they are used; "Liquitol B" being used on cast iron and "Liquitol C" on steel.

Concerning the question of value, the witness' testimony is extremely weak. He was in Germany in August 1939, approximately 19 months after the date of exportation of the instant merchandise, and spent 2 days at the plant of the German manufacturer of "Alurit." During that time, he saw "large quantities of this merchandise at the factory" (R. 12), and was shown "orders that they had received from German plants for this commodity which were sold under their European trade name" (R. 20), demonstrating that "we were paying the same as what he was selling the stuff for in Germany" (R. 22). The references to orders and prices are without supporting sales records or invoices. Furthermore, the witness' translations of foreign advertisements of "Alurit" (plaintiff's exhibits 2 and 3) imply that the foreign product is used only on steel. Such explanation creates doubt concerning the sameness or similarity of the German product, "Alurit," and the instant merchandise which consists of two classes or qualities of so-called "Liquitol," each composed of different ingredients to adapt it for a specific use; one to be used on steel and the other on cast iron.

There are other omissions in plaintiff's testimony to deprive it of sufficient value for establishing foreign value. There is nothing in the record showing that the witness is familiar with the ordinary course of trade for merchandise like or similar to that under consideration. No mention is made concerning usual wholesale quantities. Nor is there anything on which to base a definite finding that the prices observed by the witness during his 2-day visit at the German manufacturer's plant were freely offered to all purchasers. In other words, the testimony fails to establish essential details required under the statutory definition, section 402 (c), *supra*.

The documentary evidence in the form of an affidavit, executed on April 2, 1940, by the director and manager of the Holland shipper of

the instant merchandise (plaintiff's exhibit 5), and the special agent's reports (defendant's exhibits 6 and 7) contain nothing to support plaintiff's claim of a foreign value.

Counsel for plaintiff, in his brief, argues that "there is not one scintilla of evidence in the record showing *an absence* of foreign value *in Germany*, since the evidence offered by the government only shows an absence of foreign value in *The Netherlands*," and then adds it is "almost a matter of judicial notice" that the instant merchandise had a foreign value in Germany. Both contentions are completely without merit.

The finding by the appraiser is presumptively correct, section 501 of the Tariff Act of 1930 (19 U. S. C. § 1501), and such statutory presumption attaches to all elements included in the appraised value. Thus, plaintiff, challenging the correctness of the appraiser's action, assumed the burden of proving otherwise. *United States* v. *Freedman & Slater, Inc.*, 25 C. C. P. A. 112, T. D. 49241. For plaintiff's claim to prevail, it was necessary not only to prove that the appraised value was erroneous, but also to establish the correct value. *Harry Garbey* v. *United States*, 24 C. C. P. A. 48, T. D. 48332. Neither of the obligations was met.

Defendant's motion to dismiss the appeal for failure by plaintiff to make out a *prima facie* case is granted, and judgment will be rendered accordingly.

The discussion herein, with the conclusion reached, makes it unnecessary to refer to the phase of the case concerning the country of exportation.