UNITED STATES v. F. W. HAGEMANN (No. 4694)[1]

United States Court of Customs and Patent Appeals, March 18, 1952

*David N. Edelstein,* Assistant Attorney General (*Richard F. Weeks* and *Samuel D. Spector,* special attorneys, of counsel), for the United States.
*John D. Rode* for appellee.

[1] C. A. D. 484.

Before GARRETT, Chief Judge, and JACKSON, O'CONNELL, JOHNSON, and WORLEY, Associate Judges

JACKSON, Judge, delivered the opinion of the court:

In the early part of February, 1938, appellee, as consignee for the Alpha Lux Company, Inc., the importer, brought into the port of New York 45 drums of a substance known as "Liquitol C" marked "SCS, Germany," and 20 drums of "Liquitol B" marked "E, Germany," from Rotterdam, The Netherlands. The imported goods are chemical in their nature and were sold to the importer by the N. V. Internationale Mineralen Compagnie of Den Haag, a Dutch corporation. The merchandise, which was manufactured in Germany, was covered by an invoice headed "Den Haag, 19 January, 1938," and shows prices of Liquitol B and Liquitol C at 20 reichsmarks and 16 reichsmarks per 100 kilos, respectively, less 2 per centum cash discount. They were entered at the invoice values which were advanced by the appraiser at the port of New York to $0.1218 per pound for Liquitol B and $0.0667 per pound for Liquitol C, net packed, based on United States value, section 402 (e) of the Tariff Act of 1930 (19 U. S. C., sec. 1402 (e)), on the theory that The Netherlands was the country of exportation in which there was no foreign or export value.

An appeal for reappraisement of the merchandise was duly taken to a single judge of the United States Customs Court by the importer, who contended that the entered value represented the statutory foreign value in Germany and that there was no export value there. It appears that the involved merchandise was manufactured at Dusseldorf-Holthausen, Germany, by the firm of Rheinische Form-schlichte-Fabrik, Gebr. Oelschlaeger, and exported therefrom on or about January 13, 1938. It was shipped from Rotterdam for the port of New York on or about January 22, 1938.

The single judge in his decision, *F. W. Hagemann* v. *United States*, 19 Cust. Ct. 256, Reap. Dec. 7390, held that the appellant had failed to establish a prima facie case. He accordingly granted a motion made by counsel for the Government to dismiss the appeal.

Upon appeal to the Division from the judgment of the single judge, it clearly appeared that the trial court had erred in granting the motion and also that the motion was inadvertently made because, admittedly, there was nothing to support it.

It had not been argued at the trial that the appraisement had been made subsequent to the enactment of the Customs Administrative Act of 1938, amending sec. 501 and directing that the court shall determine a value "notwithstanding that the original appraisement may for any reason be held invalid or void and that the merchandise or samples thereof be not available for examination," (19 U. S. C. [1946 edition] sec. 501 (a)).

In the disposition of the case when first tried, the trial judge gave no consideration to the question of the country of exportation because, in his opinion, there had been a failure to establish foreign value.

In the decision of the Division, Reap. Dec. 7623, the judgment of the single judge was reversed for the reason hereinbefore set out and the cause remanded with instructions to grant a new trial so that the witness for the importer could testify regarding the market price of the involved merchandise in Germany since 1931, and for such other evidence as the parties would offer concerning the value of the merchandise in Germany. It appears that under the ruling of the single judge this witness was not permitted to testify with respect to values in Germany.

Pursuant to the remand, the case again came before the single judge and additional testimony was offered on behalf of the importer. In the decision, Reap. Dec. 7815, it was stated that the additional testimony materially changed the record relating to market conditions in Germany and that it became necessary because of such testimony to consider the issue with respect to those market conditions because counsel for appellant contended Germany to be the country of exportation.

The single judge found and held as follows:

\* \* \*

(1) That the merchandise in question consists of "Liquitol B" and "Liquitol C."

(2) That the country of exportation is Germany.

(3) That a principal market in Germany is Dusseldorf.

(4) That such merchandise was freely offered for sale and sold in the said principal market to all purchasers, in the ordinary course of trade, at prices that did not vary according to the number and quantity purchased, such prices being equivalent to the invoice and entered values of the merchandise in question.

(5) That the exportation of such merchandise was restricted or controlled, and therefore no export value, section 402 (d), *supra*, exists for the products in question.

(6) That the proper basis for appraisement of this "Liquitol B" and "Liquitol C" is foreign value, section 402 (c), as modified, *supra*, and that such statutory values are the entered values.

Counsel for the Government appealed to the Division for a review of the action of the single judge. The Division affirmed that decision, one judge of the Division concurring with the majority in the finding that Germany was the country of exportation and that foreign value, as defined in section 402 (c), as amended, was the proper basis for valuation, but he was of opinion that the foreign values were lower than those at which the merchandise was entered. From the judgment of the Division this appeal was taken.

It is contended on behalf of the Government that there is no substantial evidence to support the court's findings that the involved merchandise was exported from Germany and that it was either

identical with or similar to merchandise freely offered for sale in that country for home consumption at a price equivalent to the invoice and entered value. Therefore, those are the only issues here.

It appears that the Alpha Lux Company, Inc., are importers of Liquitol, a combination of chemical compounds used in iron and steel foundries and steel producing companies to prevent rapid cooling and to desulphurize the molten metal. Liquitol B is used in connection with cast iron and Liquitol C is used on steel. The difference between the two kinds of Liquitol is that they possess different exothermic heat properties.

There is evidence of the fact that Liquitol is a trade-name of the importer and that the same commodity is known in Germany as "Alurit" and also as "Lunkerpulver" or "Lunkerit." It appears that the N. V. Internationale Compagnie of Holland was the exporting agent for the German manufacturer. In an affidavit of a director and manager of the Dutch company it is stated that the merchandise made in Germany was destined at the time it left that country to the Alpha Lux Company, Inc.; that the goods did not enter the trade or commerce of The Netherlands; that it had not been processed or treated in any manner there, but was exported from Rotterdam in the same condition and state that it left Germany. There is evidence that merchandise, the same as that which is here involved, is sold for home consumption in Germany under the German names heretofore mentioned and at the same price which was paid in Germany for the involved merchandise.

In a report of a treasury attache it is stated, among other things, that

The chemical base is purchased from a German producer in quantities sufficient to always keep about 10 tons on hand in Holland. After importation into Holland and payment of the Dutch import duty of 4%, another chemical is added to the German-made product and the resulting article is called Liquitol.

However, it further appears in another report from an assistant treasury attache that the office manager of the manufacturer in Germany stated that he understood the shipments of the involved merchandise were made in transit through The Netherlands without being in any way manipulated by the Dutch company.

It is not our function, in a proceeding of this character, to weigh evidence. That is the duty of the tribunals below. After a careful examination of the record, we are of opinion that there is substantial evidence to sustain the judgment from which this appeal has been taken.

It is contended by counsel for appellant that, consistent with our decision in the case of D. & B. Import Corp. v. United States, 29 C. C. P. A. (Customs) 65, C. A. D.172, the judgment herein should be reversed.

In that case it appears that rum was sold by a Cuban producer to

a firm in Bermuda. It was exported into Bermuda and placed in a bonded warehouse by the purchaser for more than 1½ years and then sold to the appellant and later imported into the United States from Bermuda. Clearly, the facts in that case distinguish it from the facts in the instant case. Here, it appears by substantial evidence that the imported merchandise was made in Germany and exported therefrom destined to the importer; that it did not enter into the trade or commerce of The Netherlands and was not subjected to any processing or treatment there; and that the Dutch Company was the export agent of the German manufacturer. Therefore, the *D. & B.* case, *supra*, may not be considered as an authority in the present controversy.

The case of *Tower & Sons* v. *United States*, 67 Treas. Dec. 1358, R. D. 3535, cited in the brief for the Government, concerned the country of origin of certain beads which had been exported from Japan to New York where they were held in bond and then shipped to Brotz, Canada. There, offers for sale were made but none being accomplished, the beads were reshipped to the United States. Clearly, in that case, the beads entered into the commerce of Canada, a state of facts not at all parallel to those in this case.

Counsel for the Government also cite the case of *Maier, Morton & Browne* v. *United States*, 11 Ct. Cust. Appls. 115, T. D. 38753. That case involved the importation of cloth known as "meltons," that had been manufactured at Leeds, England, and sold to the Montreal Shirt and Overall Company of Montreal, Canada. Subsequently, the Montreal Company sold them to the appellants who are merchants in the United States. It is stated in the opinion there that the issue was whether Canada is a "country" and whether the ad valorem goods were from Canada and should therefore be appraised for duty at their market value in the principal markets of Canada, or in those of the British Empire-at-large, wherever they may be found. That case certainly is not in point.

We are of opinion that the United States Customs Court had substantial evidence upon which to base its judgment herein and, therefore, its judgment is *affirmed*.