UNITED STATES *v.* BRITISH CARS & PARTS, INC., ROBERT E. LANDWEER & CO., INC. (NO. 5011)[1]

United States Court of Customs and Patent Appeals, June 8, 1960

*George Cochran Doub*, Assistant Attorney General, *Richard E. FitzGibbon*, Chief, Customs Section (*Daniel I. Auster* and *Samuel D. Spector*, trial attorneys, of counsel), for the United States.

*Barnes, Richardson & Colburn* (*Hadley S. King* and *Norman C. Schwartz* of counsel) for appellees.

[Oral argument April 8, 1960, by Mr. Spector and Mr. King]

Before WORLEY, Chief Judge, and RICH, MARTIN, and SMITH, Associate Judges, and Judge WILLIAM H. KIRKPATRICK.[2]

WORLEY, Chief Judge, delivered the opinion of the court:

This appeal involves an importation from Canada of automobiles manufactured in England and was submitted on the following stipulation:

1. The involved automobiles were manufactured in England and sold to a Canadian firm, and were shipped from England to that firm, who thereupon placed them in storage intending to sell the cars in the Canadian market.

[1] C.A.D. 741.
[2] United States Senior District Judge for the Eastern District of Pennsylvania, designated to participate *in place of Judge O'Connell,* pursuant to provisions of Section 294(d), Title 28, United States Code.

Later this intention was changed, and thereupon the Canadian firm sold the cars to the American importer, and shipped them to the United States.

2. That at no time have "such or similar" automobiles been "freely offered for sale to all purchasers" within the meaning of those words as used in Sections 402(c) and 402(d), Tariff Act of 1930, either in England or in Canada, for home consumption or for exportation to the United States, nor have "such or similar" automobiles been "freely offered to all purchasers" within the meaning of Section 402(e) of said Act; also "such or similar" automobiles within the meaning of those words as found in Section 402(f) of said Act were not being manufactured in Canada.

3. That the imported automobiles were appraised at Canadian dollars 1,282.27, each, as representing the "cost of production" in Canada ascertained by reference to the fact that the cars had been imported into Canada from England and were placed in storage with intent to sell them in the Canadian market, and were later sold by the Canadian importer to the American importer, and exported to the United States; or

4. That the "cost of production" of said automobiles in England as ascertained by reference to manufacture in England and subsequent sale thereof, as referred to in Section 402(f) was English pounds 356 each.

5. That the sole dispute between the parties is whether the automobiles should be valued at Canadian dollars 1,282.27 each or English pounds 356 each. Neither party denies the accuracy of these respective amounts.

The sole issue here as below is whether the proper basis of valuation is the actual cost of production of the automobiles in England or a constructive cost of production in Canada. It is agreed that one or the other is the proper basis of valuation.

The statutory formula for determining the foreign cost of production is set out in Section 402(f) of the Tariff Act of 1930 as follows:

SEC. 402 VALUE.

\*       \*       \*       \*       \*       \*       \*

(f) Cost of Production.—For the purpose of this title the *cost of production* of imported merchandise shall be the sum of—

(1) The cost of materials of, and of fabrication, manipulation, or other process employed in manufacturing or producing such or similar merchandise, at a time preceding the date of exportation of the particular merchandise under consideration which would ordinarily permit the manufacture or production of the particular merchandise under consideration in the usual course of business;

(2) The usual general expenses (not less than 10 per centum of such cost) in the case of such or similar merchandise;

(3) The cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the particular merchandise under consideration in condition, packed ready for shipment to the United States; and

(4) An addition for profit· (not less than 8 per centum of the sum of the amounts found under paragraphs (1) and (2) of this subdivision) equal to the profit which ordinarily is added, in the case of merchandise of the same general character as the particular merchandise under consideration, by manufacturers or producers *in the country of manufacture or production* who are engaged in the production or manufacture of merchandise of the same class or kind.
(Emphasis added.)

█ The appraiser and trial judge found the basis of valuation to be the constructive cost of production in Canada, while the Third Division, one judge dissenting, held the cost of production in England to be the proper basis.

While several cases have been cited in which articles manufactured in one country have come to the United States as imports from another country, there appears to have been no case in which the precise issue here was actually decided. *Maier, Morton & Browne* v. *United States*, 11 Ct. Cust. Appls. 115, T.D. 38753, relied on by the Government, involved goods shipped from England to Canada, and then imported into the United States. They were held to be imports from Canada rather than England, but were appraised on the basis of market value. Cost of production was not considered.

In *H. S. Dorf & Co., Inc., et al.* v. *United States*, 41 CCPA 183, C.A.D. 548, also relied on by the Government, goods made in France came to the United States by way of Mexico. They were appraised on the basis of "a Mexican cost of production." The Customs Court held that Mexico was the country of export, but since there was no evidence to show a Mexican value different from that found by the appraiser, the appraiser's value was sustained. This court affirmed without passing on what "a Mexican cost of production" was, or whether it was the proper standard to apply.

In *H. J. Heinz Company* v. *United States*, 43 CCPA 128, C.A.D. 619, relied on by the importer, tomato pulp made in France was shipped to England thence to the United States. It was held to be an importation from England, but since a foreign value was found to exist in England, it was not necessary to determine the cost of production. However, the opinion does contain language indicating that a constructive cost of production in England, where merchandise "such or similar" to that imported was not produced, would not have been a proper basis for valuation.

Returning to the Government's position here, *United States* v. *Henry Maier*, 21 CCPA 41, T. D. 46378, is cited, in which the court, in construing Section 402(e) of the 1922 Tariff Act, which corresponds to Section 402(f) of the 1930 Act, said:

In other words, as we construe said paragraph 4, it is not enough to establish what the ordinary profit of the manufacturer of the imported merchandise was, if merchandise of the same general character was produced and sold by others in the country of exportation, and the profit made thereon is reasonably ascertainable.

It is argued that reference to the "country of exportation" in the quoted matter indicates that cost of production is to be based on conditions in that country. However, in that appeal the country of exportation was the same as the country of manufacture, and the court did not consider the possibility that the two might be different. The quoted language, therefore, has no direct bearing on the issue here.

Section 402(f) provides that cost of production shall be the sum of four numbered items. Items (1) and (2) relate to general costs or expenses which may or may not be those incurred in connection with the particular merchandise imported, and there is no express statement as to the country to which those items relate. Item (3) relates to the cost of preparing "the particular merchandise under consideration," packed ready for shipment to the United States and is thus clearly the actual cost of such preparation in whatever country it takes place. Item (4) which relates to a profit computed on the basis of items (1) and (2), is specifically based on the profit ordinarily added in the country of manufacture. We agree with the importer that it hardly seems logical that Congress intended profit to be computed on the basis of what is ordinarily done in one country, i.e. where the goods are produced, yet base the cost of materials, fabrication, and general expenses on what is done in another. Items (1), (2), and (4) should be considered as a unit and since item (4) is expressly limited to the country of manufacture, items (1) and (2) should logically be regarded as relating to that country also.

It is argued by the Government, that since cost of production is a substitute for foreign or export value, which values are admittedly based on conditions in the country of export rather than in that of manufacture, it is not logical to compute cost of production on the basis of conditions in the latter country. ■■■ However, the intent of Congress is to be ascertained primarily from the language which it has used. Such language, in the case of item (4) of Section 402(f) specifies the country of manufacture and, by implication, items (1) and (2) must be similarly construed.

It is also to be noted that in the instant case and in the *Heinz* case, merchandise "such as or similar" to that imported was not produced in the country of export, and there may well be instances in which it would be virtually impossible to produce such merchandise in that country. For example, in the case of a manufactured article imported from a purely agricultural country, or a vegetable product imported from a country where such vegetables could not be grown. In such instances a constructive value based on hypothetical production in the country of export would not only be highly speculative, but could well be out of all proportion to the actual value of the merchandise in the exporting country. We think Congress was trying to find the most certain and stable standards it could to determine cost of production.

We conclude that the Customs Court properly found that, on the facts here, the cost of production is to be computed on the basis of the country of manufacture, in this case England rather than Canada.

It has been stipulated that the "cost of production" of the instant automobiles in England as ascertained by reference to manufacture

in England and subsequent sale thereof as referred to in Section 402(f) was 356 English pounds each, which we assume includes the cost of packing for shipment to the United States, wherever they were incurred.

The judgment is *affirmed*.