### (Reap. Dec. 10325)

### T. M. DUCHE & SONS, INC., ET AL. *v.* UNITED STATES

Entry No. 716738, etc.

(Decided September 4, 1962)

*Barnes, Richardson & Colburn* (*Hadley S. King, Norman C. Schwartz,* and *Paul J. Gavin* of counsel) for the plaintiffs.

*Joseph D. Guilfoyle*, Acting Assistant Attorney General (*Samuel D. Spector*, trial attorney), for the defendant.

OLIVER, Chief Judge: The five appeals enumerated in the attached schedule are for reappraisement of the values of certain agar agar, imported into the United States during the years 1958 and 1959. Among the issues raised by the said appeals is the question of whether the Kingdom of Morocco or the United Kingdom of Great Britain

and Northern Ireland was the "country of exportation" of the merchandise within the meaning of that term, as used in section 402 (b) and (d), Tariff Act of 1930, as amended by the Customs Simplification Act of 1956.

In each case, the merchandise was entered at the invoiced value, or its equivalent, in United States dollars. It was appraised on the basis of constructed value, which is defined in section 402(d), *supra*, at the invoiced and entered unit values (or, in some cases, at a slight advance over said unit values), plus 18.8 per centum, net, packed. It has been established that the appraisement was made on the basis that the United Kingdom was the country of exportation.

Plaintiffs primarily contend that Morocco was the country of exportation within the meaning of that term, as used in the valuation provisions of the tariff act here involved. If this contention should be upheld, the parties have, by written stipulation, agreed upon facts which establish certain values, which approximate the invoiced and entered values, as the export value applicable to the merchandise.

If the United Kingdom should be determined to have been the country of exportation, plaintiffs alternatively claim that constructed value, as defined in section 402(d), *supra*, is the correct basis for the determination of the value of the merchandise. As a first alternative, it is contended that such constructed values are represented by the invoiced and entered values. As a second alternative, it is claimed that such constructed value in each case is 19 shillings, 4 pence, per kilo.

Before discussion of the issues raised by the appeals, it should be noted that the defendant contends that reappraisement appeal No. R59/15244 is invalid and insufficient to invoke the jurisdiction of the court by reason of having been untimely filed and urges its dismissal on that ground. A motion having similar effect was previously made before the late Judge Irvin C. Mollison, who, after hearing the parties and examining briefs filed by their counsel, determined that the said appeal was timely filed and denied the motion to dismiss. His determination and order in the premises are reported in *T. M. Duche & Sons, Inc.* v. *United States*, 46 Cust. Ct. 571, Reap. Dec. 9904. Judge Mollison died on May 5, 1962, and the cases were thereupon assigned to the writer for decision upon the record and briefs filed.

Judge Mollison decided that, as originally filed with the collector and transmitted to this court, the document in question was a valid and subsisting appeal for reappraisement, having only a defect in form curable by amendment, which he permitted to be made. For the reasons stated by Judge Mollison in Reap. Dec. 9904, *supra*, which I adopt as my own herein, I deny the renewed motion to dismiss the said appeal.

Plaintiffs' primary claim, i.e., that Morocco was the country of exportation, is based upon the following contentions: That the merchan-

dise was produced in Morocco by a firm called Societe d'Etudes et de Recherches de Procedes Chimiques, which, in the record and briefs, is referred to as SEPROC, and will be so referred to hereinafter. That, at the time of the transactions here involved, there had been a rupture in commercial relations between the plaintiffs and SEPROC, because of which the plaintiffs asked their English affiliate, T. M. Duché & Sons (U.K.), Ltd., of London (hereinafter referred to as Duché U.K.), to place orders with SEPROC for the merchandise here involved, totaling 15 metric tons. That Duché U.K. did so; that the merchandise was shipped from Morocco to England, where it was transshipped in its original containers without being processed, manipulated, manufactured, or altered, and without the payment of British customs duties, to vessels bound for the United States. That the plaintiffs reimbursed Duché U.K., under the latter's invoices, an amount representing the actual costs to Duché U.K. in connection with the merchandise, i.e., purchase price, cost of transporting the merchandise from Morocco to England, and cost of transshipment.

With respect to plaintiffs' primary claim, as thus outlined, defendant contends that plaintiffs failed to offer evidence to establish their contentions. Further, that there being no intent on the part of SEPROC to sell or ship the merchandise to the United States, it cannot be considered to be an exportation from Morocco, but must be deemed to be an exportation from the United Kingdom.

I am of the opinion that the record evidence is sufficient to sustain the position of the plaintiffs, that is to say, that the involved merchandise was, for the purposes of tariff valuation, exported from Morocco and not from the United Kingdom.

On that issue, the record consists of (1) the oral testimony of a vice president and director of the plaintiff corporations who, at the pertinent times, had charge of the importation, purchasing, and selling of products such as agar agar, (2) an affidavit, received in evidence over the objection of defendant's counsel as plaintiffs' exhibit 2, of the secretary of Duché U.K., relating to the transactions here in issue, and (3) a copy of the British Customs and Excise Act of 1952 (plaintiffs' exhibit 4), relating to the transshipment of merchandise in England without payment of duty thereon.

The testimony of the vice president of the plaintiffs and the affidavit of the secretary of Duché U.K. establish the facts of the case substantially, as hereinbefore outlined, in the recitation of the plaintiffs' contentions. Counsel for the defendant finds the evidence deficient in particularity or detail, e.g., he asserts that there is not sufficient identification between any shipments made from Morocco to England and those at bar; he cites the official invoices and bills of lading as, on their face, failing to indicate that the shipments were other than exportations originating in England, and points out that there is no proof that

conditions or restrictions, imposed by H. M. Excise Commissioners, were met if the merchandise at bar had, in fact, been transshipped in England.

I am of the opinion, however, that the evidence offered by the plaintiffs made out a *prima facie* case in favor of their claim and that the burden of going forward with the evidence was not met by the defendant. The evidence given by one of plaintiffs' witnesses, shown to have been familiar with the American end of the transactions, was given orally, under oath, and subject to cross-examination. His testimony was straightforward, frank, credible, and was attended by sufficient detail to satisfy the court that the facts were as he stated. It established that, at all times, it was the intention of the plaintiffs and Duché U.K. that the purchases of the agar agar here involved, made from the Moroccan producer, were destined for shipment to the United States; that that purpose was effected; and that the roundabout manner of proceeding was necessitated by the break in relations between the American purchaser and the Moroccan seller.

His testimony is corroborated and amplified in detail by the affidavit of the secretary of the British affiliate, who was familiar with the European end of the transactions.

I do not consider the deficiencies, which counsel for the defendant finds in the evidence presented, to be material or of such substance as would impair the finding I make that a *prima facie* case in favor of the plaintiffs' position has been made out. I am of the opinion that the identification between the Moroccan shipments and the merchandise at bar has been sufficiently established, and that it is immaterial whether any specific conditions upon the transshipment of the merchandise were imposed by the Commissioners of the Excise in England. The only material facts are that transshipment without change was permitted and effected, which facts have been amply established.

Counsel for the defendant asserts that there is a contradiction between the nature of the transactions as shown on the official invoices and bills of lading and as revealed by the record made on the trial of the issue. If, in fact, such a contradiction exists, there is no rule of law which binds the plaintiffs in this court to the statements made on invoices and bills of lading, nor is there any bar to the reception of evidence as to the true facts. *United States* v. *Meadows, Wye & Co. (Inc.)*, 49 Treas. Dec. 959, T.D. 41622, affirmed in *Same* v. *Same*, 14 Ct. Cust. Appls. 488, T.D. 42113; *Wallace Pencil Co.* v. *United States*, 8 Cust. Ct. 1, C.D. 572; *United States* v. *Paul Puttmann*, 21 C.C.P.A. (Customs) 135, T.D. 46466.

Counsel for the defendant asserts that the transactions here involved cannot be considered to be exportations from Morocco for the

alleged reason that SEPROC did not intend to ship the merchandise involved to the United States. Such lack of intent on the part of one of the parties to the shipment, it is urged, bars a finding that the shipments represented exportations from Morocco within the meaning of the export value statute. In this connection, there are cited the cases of *D. & B. Import Corp.* v. *United States*, 5 Cust. Ct. 108, C.D. 380, affirmed in *Same* v. *Same*, 29 C.C.P.A. (Customs) 65, C.A.D. 172; *Acker* v. *United States*, 1 Ct. Cust. Appls. 404, T.D. 31481; *Maier, Morton & Browne* v. *United States*, 11 Ct. Cust. Appls. 115, T.D. 38753.

There is no indication in the case at bar that SEPROC did *not* intend that the merchandise should ultimately be shipped to the United States. Apparently, it believed that the transactions with Duché U.K. were for exportation of agar agar to the United Kingdom, but it would also appear that the ultimate destination was a matter of indifference to it, since, under the stipulated facts, such or similar merchandise was also freely sold or offered for sale for exportation to the United States.

Furthermore, it clearly appears that at all times, from the purchase of the merchandise from SEPROC until its importation into the United States, it was the intention of Duché U.K. and the plaintiffs that the United States was to be the destination of the merchandise.

None of the cited cases involved a situation analogous to that in the case at bar, and none is controlling here.

All of the cited cases stand for the proposition that where goods are shipped from the country in which they originated to an intermediate country, and the intent to export the goods to the United States is first formed in the intermediate country, the latter will be considered, for tariff purposes, to be the country of exportation, the goods having lost their status as exports of the country in which they originated.

The facts in the case at bar, however, do not refer to such a situation; rather, they are more in line with those in the cases of *United States* v. *Geo. E. Mallinson Importing Co., Inc.*, 14 Cust. Ct. 382, Reap. Dec. 6125; *W. R. Zanes & Company et al.* v. *United States*, 40 Cust. Ct. 678, Reap. Dec. 9062; and *United States* v. *F. W. Hagemann*, 39 C.C.P.A. (Customs) 182, C.A.D. 484. In each of those cases, as here, the intent of the purchaser at all times was that the goods were destined to be imported into the United States; the goods did not enter into the commerce of the intermediate country; and they were in no way altered or changed in that country. I am satisfied that the record in the case at bar establishes that the goods at bar should be treated as they were in the cases just cited, as exportations from the country of origin, rather than of the intermediate country.

On the record before me, I find as facts:

1. That the involved merchandise consists of agar agar produced in Morocco and exported therefrom to the United States via transshipment through the United Kingdom during 1958 and 1959, pursuant to an agreement between the plaintiffs and a related corporation in the United Kingdom.

2. That, during the course of its transshipment through the United Kingdom, the merchandise was not intended to, and did not, in fact, enter the trade and commerce of the United Kingdom.

3. That, at the time of exportation from Morocco of the merchandise involved herein, such or similar merchandise was freely sold or offered for sale in the principal markets of Morocco, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, at the prices indicated below, such prices including the cost of all containers and coverings of whatever nature and all other expenses incidental to placing the merchandise in condition, packed ready for shipment to the United States:

| Reappraisement No. | Date of exportation from Morocco | price per kilo |
| --- | --- | --- |
| R59/15244–5790 | June 16, 1959 | $3.00 |
| R58/27517–11257 | September 13, 1958 | $3.00, less 2.6% |
| R59/4097–1106 | October 11, 1958 | ”　　”　　” |
| R59/7103–2625 | February 3, 1959 | ”　　”　　” |
| R59/11788–03566 | March 19, 1959 | $2.90, less 1.71% |

I conclude as matters of law:

1. That the merchandise was exported from Morocco, rather than from the United Kingdom.

2. That export value, as that value is defined in section 402(b) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, is the proper basis of value for the merchandise involved herein and that the said export values are as indicated in finding of fact No. 3, *supra*.