(Reap. Dec. 10466)

Thrifty Equipment Co.
T. D. Downing Co. } v. United States

Entry Nos. 6023; 9855.

(Decided March 12, 1963)

*Lawrence & Tuttle* (*Edward N. Glad* of counsel); *Barnes, Richardson & Colburn* (*Hadley S. King* and *Norman C. Schwartz* of counsel), associate counsel; for the plaintiffs.

*John W. Douglas*, Acting Assistant Attorney General (*Richard E. FitzGibbon* and *Daniel I. Auster*, trial attorneys), for the defendant.

FORD, Judge: The two appeals listed above were consolidated for the purpose of trial. The merchandise covered by these appeals consists of various tractor parts, manufactured in Italy by Bertoni & Cotti, hereinafter referred to as Berco, but purchased from Tractor Parts & Equipment Co., Ltd., of London, England, and shipped to the United States via the United Kingdom.

The appraiser of merchandise at the port of Boston determined that the country of exportation for tariff purposes was the United Kingdom and, accordingly, appraised the merchandise on the basis of foreign market value in Great Britain.

It is the contention of plaintiffs herein that the merchandise never entered the trade and commerce of the United Kingdom and, accordingly, the appraisement should have been made on the basis of export value with Italy as the country of exportation.

Counsel for the respective parties have stipulated the following facts:

IT IS HEREBY STIPULATED AND AGREED by and between the parties hereto subject to the approval of the Court, that if the Court should find and hold that the merchandise herein be deemed an exportation from Italy, the market value or the price on or about the date of exportation from Italy of the merchandise herein at which such or similar merchandise was freely offered for sale in Italy for exportation to the United States in the usual wholesale quantities and in the ordinary course of trade including the cost of containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States, is the invoiced unit value, plus 25%, net packed; and that the foreign value is no higher.

Based upon this stipulation, the testimony of one witness, called on behalf of plaintiffs, and various exhibits and special agents' reports, the court must determine the country of exportation for tariff purposes.

Mr. George Griffin, called as a witness on behalf of plaintiffs, testified that he was associated with the firm of Wingate & Johnston of London, England, shipping and forwarding agent, and had been associated with the firm since 1926; that his duties are to assist in the shipment of goods and directing the movement of merchandise for the firm's clients; that he has been familiar with the importer herein for 10 or 12 years; that he is familiar with and personally attended to the two shipments involved herein; that he received the documents from Tractor Parts & Equipment Co., Ltd., of London, England, to whom the goods had been shipped from Italy, for the account of Thrifty Equipment Co., and arranged for immediate reshipment of the merchandise to Boston; that the merchandise never left the dock area nor the control of British customs and excise; that his firm paid the freight from Genoa to London for the account of Thrifty Equipment Co.; that Thrifty Equipment Co. was billed for this freight charge, as represented by exhibits 1 and 2 of the plaintiffs.

The various Treasury agents' reports and their exhibits, received in evidence as defendant's exhibits A through C, were the subject of an order of this court, dated December 12, 1961, as to their admissibility. Thereafter, on December 27, 1961, a hearing, pursuant to the order, was had, and certain portions of said exhibits were excluded and marked in red with an "X." These exhibits, as finally received, will next be considered.

Defendant's exhibit C establishes the fact that the importer herein could not purchase the involved merchandise directly from the manufacturer in Italy. The exhibit proper is report 8–570, dated July 24, 1959. In this report, at pages 7–8, the following statement is made:

This was a situation where because of existing contracts between Tractor Parts and Equipment Company and the manufacturer in Italy, Thrifty Equipment Company could not buy direct from Italy, but was forced to buy through the English firm. The shipments were invoiced out of England by Mr. Griffin of Wingate and Johnston at the unit values billed by the Italian supplier, F.O.B. Italy shipping port. An additional 5% was paid to Tractor Parts and Equipment Company and termed a handling charge. * * *

It is also established that freight from Genoa to London and from London to Boston, as well as other charges, was paid by the plaintiffs herein. Plaintiffs' exhibits 1 and 2 are photostatic copies of invoices covering these charges.

Exhibit AA of defendant's exhibit C, which is an interrogation of Mr. Joseph Lubin, who appears, from an examination of the various documents submitted, to be managing director of importer herein, establishes the reason why shipments were made from Italy via England to this country. So far as is pertinent herein, the following statements were made:

Q. Mr. Lubin you have imported various tractor parts from London, England, purchased from Tractor Parts and Equipment, Ltd., London, England; said parts being imported into England from Italy. Will you please explain as briefly as possible, and to the point, why these parts were not purchased direct by you from the Italian supplier?—A. Yes, I can, and there also is a contract in the files that you have. The Italian concern had approached me a few years ago about acting as their distributor in the Western half of the United States. I flew to New York to visit the managing director of the Italian concern called Berco. I had come to an agreement with him, but he said that the final decision would rest upon a meeting in Italy. I then flew to Italy some few days afterward and I was told that because they have a firm contract with a concern in New York, which actually I knew about, they were not in a position where they could give me this contract for some several months. I then asked what territory they had open because I was interested in Canada. I was told that Canada was available and so was England. I then told them that I was in a position to place an order for a shipment to Canada and that I would forward this order on to them. I went from Milan, Italy, to London, England and in a conference with Mr. Cole of Tractor Parts and Equipment Company, mentioned the fact that England was open. About that time both of us had thought of the same idea; that was to accept the contract for England and Canada and England would in turn ship the material to me. I telephoned Mr.

Bertoni, who was a director of Berco, that I would like to come back to Italy to conclude some kind of an arrangement pertaining to the territory that was open. I took Mr. Cole with me, went to Italy, concluded the contract, which was carefully worded so I could get material to the United States without stepping on the toes of the importer in New York who Berco wanted to cancel for nonperformance of the contract. I then placed orders with Tractor Parts and Equipment Company which were considerably in excess of the parts they could sell in England and this material subsequently found its way into our purchases.

Q. What was the agreement you had with Tractor Parts and Equipment Company relative to unit prices and other costs, making up this total FOB London cost?—A. I was to pay Tractor Parts and Equipment Company the cost of material, plus an additional 5% for handling and financing.

Q. To what point geographically would you pay the costs to Tractor Parts and Equipment Company?—A. It was my intention to pay all costs relative to the parts. However, I believe they were purchased on a CIF London basis. I state that because Berco contracts usually are CIF London; at least that is what the subsequent contract they had given me stated, CIF prices. I truthfully do not know at this time whether or not freight was or was not added to the original shipments.

Based upon the foregoing, it is obvious that the involved merchandise was never intended to enter the trade and commerce of England nor did it, in fact, leave customs supervision in England. The statements in exhibit AA of defendant's exhibit C as to the manner by which Tractor Parts & Equipment Co., Ltd., London, obtained the distributorship for Berco, and the statement that the contract was carefully worded to enable plaintiffs herein to purchase the merchandise, are indicative of the fact and would tend to establish that Berco was aware of the situation. If this, in and of itself, were not sufficient, the fact that plaintiffs herein were negotiating for a distributorship and were turned down because of an existing contract with a distributor in New York places Berco on notice of the intent of plaintiffs to purchase through Tractor Parts & Equipment Co., Ltd.

In view of the facts hereinabove set forth and the record herein, and following the principles in *United States* v. *F. W. Hagemann*, 39 CCPA 182, C.A.D. 484; *D. & B. Import Corp.* v. *United States*, 5 Cust. Ct. 108, C.D. 380; affirmed, *Same* v. *Same*, 29 CCPA 65, C.A.D. 172; *Maier, Morton & Browne* v. *United States*, 11 Ct. Cust. Appls. 115, T.D. 38753; *United States* v. *Geo. E. Mallinson Importing Co., Inc.*, 14 Cust. Ct. 382, Reap. Dec. 6125; *W. R. Zanes & Company et al.* v. *United States*, 40 Cust. Ct. 678, Reap. Dec. 9062; *Acker* v. *United States*, 1 Ct. Cust. Appls. 404, T.D. 31481, I find and hold that the country of exportation of the involved merchandise is Italy.

In view of the findings and accepting the stipulation entered into for the parties, I find as matters of fact:

1. The involved merchandise consists of tractor parts, which were appraised on the basis of foreign market value in England, pursuant

to section 402(c) of the Tariff Act of 1930, as amended by the Customs Administrative Act of 1938.

2. The merchandise was manufactured in Italy by Bertoni & Cotti and was exported to the United States via the United Kingdom.

3. None of the merchandise involved was intended for diversion into the trade and commerce of the United Kingdom, and none of the merchandise was, in fact, so diverted; nor did the merchandise leave the control of British customs; nor was the merchandise in any way processed or manipulated in the United Kingdom.

4. On or about the dates of exportation from Italy of the merchandise involved herein, such or similar merchandise was freely offered for sale in Italy, for exportation to the United States, in the usual wholesale quantities and in the ordinary course of trade, at prices equivalent to the invoiced unit values, plus 25 per centum, such prices including the cost of containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States, and that there was no higher foreign value, as that value is defined in section 402(c) of the Tariff Act of 1930, as amended, *supra*.

I find as conclusions of law:

1. That the merchandise was exported from Italy.

2. That the export value in Italy of similar merchandise, as defined in section 402(d) of the Tariff Act of 1930, is the proper basis of value for the merchandise involved herein.

3. That the foreign value of said merchandise in Italy did not exceed the export value.

4. That the proper dutiable export value of the involved merchandise is the invoiced unit values, plus 25 per centum, net, packed.

Judgment will be entered accordingly.